## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**HANNAH LEDBETTER, Individually and**
**On Behalf of All Others Similarly Situated,**
                                                    **PLAINTIFF(S)**


**v.**                                              **NO. _____**

**CLOUD 9 ONLINE SMOKE & VAPE, LLC,**
**KHALIL AMOR,**
**GREEN RUSH, LLC., DBA XHALE CITY,**
**THESY, LLC., DBA ELEMENT VAPE,**
**XHALE CITY FRANCHISE COMPANY LLC,**
**STIIIZY IP, LLC,**
**L&K DISTRIBUTION,**
**COOKIES CREATIVE CONSULTING & PROMOTIONS, INC.,**
**SAVAGE ENTERPRISES,**
**CHRISTOPHER G. WHEELER,**
**PRESTON WHEELER,**
**COLUMBIA LABORATORIES,**
**ENCORE LABS, LLC,**
**PHARMLABS SD,**

**AND JOHN DOES 1-1000.**
                                                    **DEFENDANTS.**

---

## COMPLAINT – CLASS ACTION

COMES NOW, Plaintiff, HANNAH LEDBETTER ("Plaintiff"), Individually

and On Behalf of All Others Similarly Situated, by and through counsel, Stuart &

Johnston, LLC; and, for this Complaint, Plaintiff alleges the following upon

information and belief, except for the allegations pertaining specifically to Plaintiff,

which are based on personal knowledge:

## INTRODUCTION

1.     Plaintiff is a person who is a resident of the State of Georgia who purchased delta-8 ("D8") vape pens ("the Product") from Defendant, Cloud 9 Online Smoke & Vape, LLC ("Cloud 9").

2.     The Product was manufactured, distributed, tested, and/or sold by Defendant(s).

3.     Plaintiff purchased Products manufactured, distributed, tested, and/or sold by Defendant(s) that contained a concentration of more than 0.3 percent on a dry weight basis of delta-9 ("D9") THC. Plaintiff intended to purchase the Products labeled as D8 vape pens but was sold vape pens containing a concentration of more than 0.3 percent on a dry weight basis of D9 THC.

4.     The Controlled Substances Act of 1970 prohibits the manufacturing, distribution, and sale of cannabis products with a delta-9 ("D9") tetrahydrocannabinol ("THC") concentration of more than 0.3 percent on a dry weight basis.

5.     Plaintiff seeks to represent the Class defined below.

## JURISDICTION AND VENUE

6.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 18 U.S.C. § 1964©, 28 U.S.C. § 1331 and

28 U.S.C. § 1367.

7.    The aggregate amount in controversy exceeds $50 million, including any statutory damages, exclusive of interest and costs.

8.    The Court has personal jurisdiction over Defendants related to this matter as, *inter alia*, Defendants manufactured, distributed, and/or sold the Products in this district, and the actions giving rise to the claims occurred within this district.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 124(b)(1), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

10.    Plaintiff purchased the Products from Defendant(s), Cloud 9, TheSY, LLC dba Element Vape ("Element"), Green Rush LLC dba Xhale City ("Xhale City"), and Xhale City Franchise Company LLC ("Xhale Franchise"), located in or around Atlanta, Georgia.

## **PARTIES**

11.    Plaintiff is a resident of the State of Georgia.

12.    Defendant, Cloud 9, is a limited liability company organized under the Georgia Limited Liability Company Act and doing business in the states of Georgia and Florida. Cloud 9 has a business and mailing address of 3042 Matlock Drive, Kennesaw, Georgia, 30144.  Cloud 9's registered agent is Corporate Creations Network, Inc., 2985 Gordy Pkwy 1st Floor, Marietta, Georgia, 30066-3078. Cloud 9

is a THC vape pen retailer with over 50 retail locations in Georgia and Florida. Prior to its conversion to an LLC in 2021, Cloud 9 Online Smoke & Vape Inc.'s CEO, CFO, and secretary was Khalil Amor, 1090 Olde Towne Lane, Woodstock, Georgia, 30189.

13.     Defendant, Xhale City, is a limited liability company organized under the Georgia Limited Liability Company Act and doing business in the state of Georgia.  Xhale City has a business and mailing address of 759 Braselton Hwy, Ste B, Lawrenceville, GA, 30043.  Xhale City's registered agent is Cogency Global, Inc., 900 Old Roswell Lakes Pkwy, Ste 310, Roswell, Georgia, 30076-8667. Xhale City is a THC vape pen retailer with over 50 retail locations across the state of Georgia. Upon information and belief, NURUDDIN WADHWANIA, who is the organizer of Xhale City, is also an officer of Xhale City.

14.     Defendant, Element, is a limited liability company organized and existing under the general business entity and corporation law of the state of Alabama. Element, has a business and mailing address of 10620 Hickson Steet, El Monte, California, 91731. Element, is an online retailer that sales and distributes D8 and other vape products across several states, including Georgia. Element's registered agent for service of process is Corporation Service Co, Inc.; 641 S Lawrence Street, Montgomery, Alabama, 36104. Their corporate officers are listed as Christopher Sy, Manager, and Vinh Sy, Manager.

15.     Defendant, STIIIZY IP LLC (formerly "Stiiizy LLC") ("Stiiizy LLC") is a California Limited Liability Company that, upon information and belief, is doing business in the states of California, Michigan, Nevada, Georgia, Arizona, and Illinois. Stiiizy LLC, is involved in the cultivation, manufacturing, distribution, and retail of hemp and hemp-derived products. Stiiizy LLC, has a business and mailing address of 728 E Commercial Street, Los Angeles, California, 90012. Stiiizy LLC's registered agent is Legalinc Registered Agents, Inc.; 4 Embarcadero Center, Suite 1400, San Francisco, California, 94111. The manager/member included in a September 2023 filing with the California Secretary of State is Stiiizy, Inc., a Delaware corporation having an address of 728 E Commercial Street, Los Angeles, CA 90012. Stiiizy, Inc.'s CEO is James Kim and CFO is Gregory Fink. Upon information and belief, as of November 2021, the managers/member of Stiiizy LLC was Shryne Group, Inc., which was merged into Stiiizy, Inc. on March 28, 2023. Prior to the merger into Stiiizy, Inc, Shryne Group, Inc.'s Manager was Jon Avidor, and has the following members: James Kim, Brian Mitchell, TS Stiiizy, LLC, a Delaware Limited Liability Company, and J&J Investment Team LLC, a Delaware Limited Liability Company.

16.     Defendant, Xhale City Franchise Company LLC ("Xhale Franchise"), is a Delaware Limited Liability Company that is authorized to conduct business in the State of Georgia and that is conducting business in the State of Georgia.

17.   Defendant, L&K DISTRIBUTION is a business entity having a location in the state of California. L&K Distribution has a business and mailing address of 16831 Knott Avenue, La Mirada, California, 90638. Their registered agent is Jonathan Lee; 16831 Knott Avenue, La Mirada, California, 90638. The corporate officers are listed as Jonathan Lee, Chief Executive Officer; Brian Kim, Secretary; and Ki Sun Kim, Chief Financial Officer.

18.   Defendant, COOKIES CREATIVE CONSULTING & PROMOTIONS, INC., is a corporation organized and existing under the general business entity and corporation law of the state of California and has locations in the states of California, Colorado, Florida, Maryland, Massachusetts, Michigan, Georgia, Montana, Nevada, Oklahoma, and Oregon. Cookies Creative Consulting & Promotions, Inc. has a business and mailing address of 1350 Van Ness Ave, San Francisco, California, 94109. Their registered agent is Eresidentagent, Inc.; 7801 Folsom Boulevard, Suite 202, Sacramento, California, 95826. The corporate officers are listed as Parker Berling, Chief Executive Officer, Director, Secretary; Lesjai Change, Director; Ian Habenicht, Chief Financial Officer; Gilbert Milam, Director; and Ramsey Wilder, Director.

19.   Defendant, SAVAGE ENTERPRISES (aka Savage Eliquid Corporation) ("Savage Enterprises"), is a corporation organized and existing under the general business entity and corporation law of the state of Wyoming and does

business in the States of Arkansas, California, Alabama, Georgia, Florida, Hawaii, Idaho, Kentucky, and other states. Savage Capital, LLC is a related party to Savage Enterprises, who, at the direction of Savage Enterprises or its officers, loans money to the different Savage entities, who are presently unknown to the Plaintiff. John Does 21-30 are individuals or entities who have provided credit or other financing to Savage or have provided Savage with distillate, like PUR ISO LABS, LLC. Savage Enterprises has a business address and mailing address of 7 Vanderbilt, Irvine, California, 92618-2011. Their registered agent for service is Incorp Services Inc., 4037 US Highway, 231 STE A, Wetumpka, AL 36093-1224. Savage Enterprises Corporation and Savage Eliquid Corporation have the same registered agent name and address. Savage Enterprises also uses the same registered agent with an address of 101 E 9th Ave, Suite 12B, Anchorage, AK, 99501-3651. Savage Enterprises was also incorporated in Arkansas on September 22, 2022, as a place of incorporation with a foreign corporation shown as California. Savage Enterprises shows a registered agent of service as Incorp Services Inc. 4250 N Venetian Ln, Fayetteville, AR 72703-5077. The corporate officers are listed as Christopher Wheeler as a shareholder and Matt Winters as President and shareholder. Corporate filings show five shareholders: Christopher Wheeler – 40.5%; Mathew Winter – 40.5%; Brittany Hawkins – 10%; Ernest Ciaccio – 4.5%; and Abraham Sahagun – 4.5%. Victoria Walsh is Savage Enterprises compliance officer. Savage markets its

products through delta-8-THC and delta-10-THC brand Delta Effex (www.DeltaEffex.com), CBD brand Savage CBD (www.SavageCBD.com), e-liquid brand Vape 100 (www.vape100.co) Delta Extrax and Savage CBD are organizations under the umbrella of Savage Enterprises. Jon Dougherty holds himself out as the president of Savage Enterprises on social media platforms such as LinkedIn. The corporate officers are also shown as Matthew Montesano, Chief Financial Officer; Matthew Winters, Chief Executive Officer; and Brittney Hawkins, Director. John Doe 76 is their ISO.  These persons are referred to the Savage Defendants hereinafter.  All of the Savage Defendants were placed on notice they were engaging in noncompliant transactions by selling the Products at issue, yet they continued to sell the Products.

20.   COLUMBIA LABORATORIES is a corporation organized and existing under the general business entity and corporation law of the state of Oregon and does business in the states of Oregon and Georgia. Columbia Laboratories is a lab that operates in Oregon that produced one or more of the inaccurate COAs for one or more products identified herein. Columbia Laboratories has a mailing and business address of 12423 NE Whitaker Way, Portland, Oregon, 97230. Their registered agent is Derrick Tanner; 12423 NE Whitaker Way, Portland, Oregon, 97230. Columbia Laboratories is a member of Tentamus Group. Columbia Laboratories issued an inaccurate COA to COOKIES CREATIVE CONSULTING

& PROMOTIONS.

21.    PRESTON WHEELER is an individual who, on information and belief, conducts business in the State of Georgia.

22.    CHRISTOPHER WHEELER is an individual who, on information and belief, conducts business in the State of Georgia.

23.    KHALIL AMOR is an individual who, on information and belief, resides in, and conducts business in, the State of Georgia.

24.    ENCORE LABS, LLC, is a corporation organized and existing under the general business entity and corporation law of the state of California and does business in the state of California. Encore Labs, LLC, is a lab that operates in California that produced one or more of the inaccurate COAs for one or more products identified herein. Encore Labs, LLC, has a mailing and business address of 75 N Vinedo Avenue, Pasadena, California, 91107. Their registered agent is Cliff Yeh; 75 N Vinedo Avenue, Pasadena, California, 91107. Encore Labs, LLC., issued an inaccurate COA to STIIIZY LLC.  The corporate officers are listed as Joseph Wang, Manager; Spencer Wong, Manager; and Cliff Yeh, Manager.

25.    PHARMLABS, LLC ("Pharmlabs") is a limited liability company organized and existing under the general business entity and corporation law of the state of California and does business in the state of California. Pharmlabs is a lab that operates in California that produced one or more of the inaccurate COAs for one

or more products identified herein.  Pharmlabs has a mailing and business address of 3421 Hancock Street, San Diego, California. Their registered agent is Greg Magdoff; 4648 Voltaire Street, San Diego, California, 92107. Pharmlabs issued inaccurate COAs to Savage Enterprises and L&K Distribution.

## GENERAL ALLEGATIONS OF FACT

### STANDING

26.    Plaintiff, HANNAH LEDBETTER, purchased five products at Cloud 9, Element, Xhale City, and/or Xhale Franchise located in or around Atlanta, Georgia.

### INJURY

27.    D9 THC is the psychoactive component of what is commonly known as marijuana.

28.    D8 THC is also psychoactive, but legal D8 THC is hemp-derived and is not a controlled substance under federal law.  If D8 THC is produced by synthesis, D9 THC is also produced.

29.    Hemp-derived D9 THC can be present in a product so long as the amount does not exceed 0.3% D9 THC by weight.  Here, all of the products Plaintiff purchased, including products marketed by the Retail Defendants, contain an illegal amount or type of D9 THC.

30.    Plaintiff purchased these Products anticipating and expecting them to

be legal D8 THC products because the Products were warranted to contain less than 0.3% D9 hemp derived THC by dry weight on the label and to contain a certain amount of D8 THC, or other cannabinoids and cannabinoid type as labeled.

31.     Plaintiff wanted a legal amount of hemp-derived delta-9 tetrahydrocannabinol (hereinafter "hemp-derived D9 THC").   Plaintiff did not purchase a product containing a legal amount of Delta 9 Tetrahydrocannabinol because of each Defendant's deception.

32.     Unbeknownst to Plaintiff, the Products labeled as "D8" contained an amount of D9 THC that exceeded 0.3% D9 hemp derived THC by dry weight.

33.     Thus, Plaintiff Ledbetter unknowingly purchased at full retail price the following eight products that were a Schedule I Controlled Substance:

   a.  COOKIES, brand name Cookies, with a strain name of Huckleberry Gelato Flower manufactured by Defendant, **Cookies**.

   b.  EXTRAX, with a strain name of Forbidden Jelly and Power Plant, manufactured by Defendant, **Savage Enterprises**.

   c.  LOOPER, with a strain named Blue Gusherz manufactured by Defendant, **L&K Distribution**.

   d.  STIIIZY HEMP**,** with a strain name of OG Kush manufactured by Defendant, **STIIIZY**.

34.     The Hemp Farming Act of 2018 removed hemp (defined as cannabis

with less than 0.3% THC) from Schedule I controlled substances and made it an ordinary agricultural commodity. Its provisions were incorporated into the 2018 United States Farm Bill that became law on December 20, 2018.

35.    Then, the interim final rule entitled "Implementation of the Agriculture Improvement Act of 2018" effective on August 21, 2020 (85 Fed. Reg. 51,639) made any product containing more than 0.3% D9 THC illegal.

36.    As used in this Complaint, a non-compliant D8 THC vape means a vape that contains more than 0.3% D9 THC hemp-derived THC by weight.

37.    Each of the Products had a COA, and these COAs did not reveal that these products contained mycotoxins and more than 0.3% D9 THC by dry weight. they

38.    Each of the Products was tested by an independent, third-party laboratory and was indicated to have a specific amount of THC.  Testing of the Products showed the hemp-derived D9 variance levels that was in excess of the legal limit:

a.    COOKIES, brand name Cookies, with a strain name of Huckleberry Gelaot Flower;

b.    EXTRAX, with a strain name of Forbidden Jelly;

c.    EXTRAX, with a strain name of Power Plant;

d.    LOOPER, with a strain named Blue Gusherz; and

e.    STIIIZY HEMP, with a strain name of OG Kush.

39.    Like here, the *Journal of the American Medical Association* published a letter demonstrating the results of "undercover" purchases of CBD. Of 84 samples tested, THC was detected in 21%.   There were other defects in the mislabeled products. Only 30.95% were accurately labeled. Accuracy of labeling depended on product type, with vaporization liquid most frequently mislabeled (87.50%) and oil most frequently labeled accurately (45.0 %).   THC was detected (up to 6.43 mg/mL) in 18 of the 84 samples tested (21.43%).   But Defendants appear to certify and sell products that contain in excess of of the allowed limit of D9 THC.   Defendants knew or should have known that their products would be published over the wires and had been mislabeled. *See e.g.*,   Lab Reports Index | Delta 8 Resellers

40.    A study published by the National Institute of Health showed that products were mislabeled, with 26% containing less CBD than labeled and 43% containing more, indicating a high degree of variability and poor standardization of online products. Notably, the oil-based products were more likely to be accurate (45% compared to 25% for tincture and 12.5% for vaporization liquid) and had a smaller percentage of deviation. Oil-based products also had a higher range of concentration. In addition to CBD mislabeling, THC was detected in 21% of samples. This study also notes that products containing THC could have sufficient enough concentrations to produce intoxication in children.

41.    Of course, in recent years, the United States Department of Justice has largely declined to bring prosecutions under the federal cannabis laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into the D8 THC commercial hemp industry.

42.    But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights under federal law. The Department of Justice can no more amend a federal statute than can any individual state and cannabis remains just as illegal under federal law today as it was when Congress passed the CSA.

43.    Persons like the Defendants who market their products as medicinal should be held to reasonable production standards to make certain this "medicine" is legal.

44.    Dealing in cannabis that contains more than 0.3% D9 THC by weight is an illegal activity under state and federal law, and those who engage in a pattern of unlawful activity should disgorge the profits and all monies received from the illegal transactions.

45.    The manufacturing, distribution, and sale of Products with more than 0.3% D9 THC by weight is not legal under the CSA.  Plaintiff purchased the Products, set out hereinabove, that contained more than 0.3% D9 THC by weight. Defendants falsely, expressly or impliedly, warranted these products to contain less

than 0.3% D9 THC by weight.

46.    Retail Defendants market and sell D8 THC Vape Pens manufactured, distributed, and/or sold by Manufacturer Defendants. Cloud 9 has over 50 retail locations in Georgia and Florida and may have additional locations in other states. Xhale City and/or Xhale Franchise has over 50 retail locations across the state of Georgia and may have additional locations in other states.

47.    Each of the Defendants warrants that these D8 THC Vape Pens, on the label and through inaccurate certificates of analysis, are compliant with the Hemp Farming Act of 2018, meaning that these products are to contain no more than 0.3% hemp-derived D9 THC by weight. This representation is false because the Products contained more than 0.3% hemp-derived D9 THC by weight.

48.    Each of the Defendants intends for Plaintiff and the Class to rely upon these false representations.

49.    The representations made by Defendants are misleading because the product label and the COAs give consumers a warrant that each Product contains a legal amount of D9 THC ingredients even though it does not.

50.    The Products are manufactured, distributed, and/or sold individually by each Defendant, and each Defendant has continuously manufactured, distributed, and/or sold illegal products for over a year, according to product testing results.

51.    Plaintiff relied on the representations on the label that the products she

bought contained a legal amount or type of Delta 9 THC.

52.    The Plaintiff would not have purchased any of the Products if Plaintiff knew that the representations that the Products purchased contained a legal amount of Delta 9 THC on the label were false and misleading.  The Plaintiff also would not have purchased the products, had she known the Product label overstated the amount of D8 THC.

53.    Plaintiff chose the Products over similarly situated and represented products that contained a legal amount and type of Delta 9 THC, as well as the advertised amount of D8 THC.

54.    The Products were illegal and worthless because the Products did not contain a legal amount of Delta 9 THC, and who would not have paid any money at all for the Products, absent Defendants' false and misleading statements and omissions.

55.    Plaintiff intends to, seeks to, and will purchase D8 products again if and when Plaintiff can do so with the assurance that Product representations that the product contains a legal amount and type of Delta 9 THC are legal and truthful.

56.    Reasonable consumers, like Plaintiff and the class members, rely on a company to honestly identify and describe the Product's components, attributes, and features relative to itself and other comparable products or alternatives.

57.    The value of the Product that Plaintiff purchased was materially less

than its value as represented by Defendant because it was illegal.

58.    Retail Defendants sold the Products at higher prices than it would have in the absence of this misconduct, resulting in additional and illegal profits at the expense of consumers.

59.    Had Plaintiff and proposed class members known the truth, they would not have bought the Products because it is not legal under the CSA.

## ALL THE MANUFACTURER DEFENDANTS KNEW

60.    Upon information and belief, one or more of the Manufacturers and Distributors of **Stiiizy**, **Savage Enterprises**, **L&K Distribution**, and **Cookies** received lab tests that indicated that their respective products contained more than 0.3% D9 THC dry weight and was therefore a Schedule I controlled substance, marijuana.  Instead of demanding that the product be compliant with federal law, these Defendants lab shopped, until each found a lab willing to issue a false COA, like Columbia Laboratories, Encore, and Pharmlabs SD (collectively, the "Lab Defendants") in this case.

61.    Savage Enterprises was sued in 2022 for selling illegal D8 vape pen products.  Despite this notice, Savage Enterprises continued to sell illegal D8 vape pens.  Indeed, upon information and belief, all of the individual Savage Defendants met in 2022 and made a conscious decision to continue selling illegal D8 vape pens. Upon information and belief, in December of 2022, the Board of Directors expressly

decided to continue selling illegal D8 vape pen products.

## THE LABS ARE AN INDISPENSABLE PART OF THE ENTERPRISE

62.    Each one of the Products listed above are accompanied by a COA claiming the product contains no more than 0.3% hemp-derived D9 THC by weight as allowed by law. The amount of D9 reported on the inaccurate COAs issued by the Lab Defendants are far below tested results from an independent third-party laboratory.

63.    Plaintiff had all five Products tested by an independent third-party laboratory. The results from all five products for the D9 cannabinoid are far above what is allowed by law.

## NON-RICO CLASS ACTION ALLEGATIONS

64.    Defendant(s) maintains a database that identifies persons who purchase D8 products and the type of D8 products purchased from the corporate Defendants through credit card receipts and customer loyalty clubs. There are thousands of class members. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following class:

> All persons who bought one or more of the same Products purchased by Plaintiff identified above in the State of Georgia who have a receipt or are identified in Defendants, **Cloud 9**, **Element**, **Xhale City**, **and Xhale Franchise** purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Defendants have a controlling interest

and legal representatives, heirs, successors, or assigns of any such persons.

65.     Common questions of law or fact predominate and include whether Defendants' representations were and are misleading in violation of Georgia and federal law and if the Plaintiff and the class members are entitled to damages or rescission.  In this case, the key issues include:

a.  Did the Products purchased by the Plaintiff and Class contain more than 0.3% hemp-derived D9 THC by dry weight, as well as the advertised amount of D8 THC?

b.  Was the Product a Controlled Substance?

c.   Are Plaintiff's claims and bases for relief are typical to other members because all engaged in an illegal transaction unknowingly and are all therefore entitled to rescind the transaction?

66.     Plaintiff is an adequate representative because Plaintiff's interests do not conflict with other members.  Plaintiff's counsel is competent to represent the Class. No individual inquiry is necessary since the focus is only on Defendants' practices, and the class is definable and ascertainable by Defendants' business records and receipts.

a.     Individual actions would risk inconsistent results and be both repetitive and impractical to justify, as the claims are modest relative to the scope of the harm.  Class action is superior because of the relatively small amount of money for each

purchase.  Indeed, public policy does not encourage the sale of illegal drugs.

b.      Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

c.      Class members number in the thousands, and joinder would be impossible.

d.      As allowed by Rule 23(b)(2), Plaintiff seeks class-wide injunctive and equitable relief because Defendant's practices continue, despite notice, and certain equitable remedies are sought.  Plaintiff seeks classification under Rule 23(b)(1), (2), and (3).

## **RICO CLASS ACTION ALLEGATIONS**

67.     RICO Class 1 is defined as any person who purchased a D8 vape manufactured by **Stiiizy LLC**, **Savage Enterprises**, **L&K Distribution**, and **Cookies** from **Cloud 9**, **Element, Xhale City and Xhale Franchise** in the four years preceding the filing of this lawsuit to the date of certification.  There are thousands of class members such that joinder is impractical.

68.     RICO Class 2 is defined as any person who purchased a D8 vape manufactured by **Stiiizy LLC**, **Savage Enterprises**, **L&K Distribution**, and **Cookies** manufacturer Defendants in the four years preceding the filing of this lawsuit to the date of certification.  There are thousands of class members such that

joiner is impractical.

69.    Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites for a class action: (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). See FED.R.CIV.P. 23(a).  Each requirement has been met, and a Class is superior to any other means.

70.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class Members prosecuting their separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases. Further, prosecuting separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for

Defendants.

71.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

72.    Defendants have facilitated the manufacturing, distribution, and/or sale of illegal marijuana to thousands of people over the course of the last four years. Therefore, the members of the Class are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. The Class is also objectively defined and presently ascertainable by reference to records in the Defendant's possession.  Their identification is a matter of ministerial determination from Defendant's receipts and/or sales logs. Thus, the Class has sufficient numerosity to be certified.

73.    Each Class Member has the same interest in buying accurately labeled products such that Plaintiff's claims, as well as the applicable defenses and their claims, are typical of the Class, and there are common questions of law. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: (a) Whether Defendants are operating a

criminal enterprise; (b) Whether the products are accurately labeled and certified; (c) Whether each Defendant's conduct was knowing and willful; (d) whether the Products purchased by the Plaintiff and Class contain more than .3 % hemp-derived D9 THC by dry weight and (e) Whether each Defendant is liable for damages and the amount of such damages. Plaintiff's claims are typical of the Class members' claims, as they are all based on the same factual and legal theories.

74.     Class action is superior to all other forms of action because of the nature of the requested relief.  Also, Plaintiffs and the Class seek a permanent injunction requiring the Defendants to comply with federal law and disgorge the monies they have received. Plaintiff seeks certification under Rule 23(b)(1) and (2) and (3).

## NON-RICO COUNTS

## COUNT I – Georgia RICO Act

75.     Plaintiff and the Class incorporate by reference all preceding paragraphs against the Manufacturer, Lab, and Retail Defendants.

76.     Under Georgia's RICO Act, "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16-14-4 (a).

77.     To establish a valid civil RICO claim, "a plaintiff must show that the

defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff." *Five Star Athlete Mgmt., Inc. v. Davis*, 355 Ga. App. 774, 778, 845 S.E.2d 754, 758 (2020).

78.   Georgia defines a "pattern of racketeering activity" in relevant part as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents[.]" OCGA § 16-14-3 (4) (A).

79.   Georgia defines racketeering activity as "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person into committing any crime which is chargeable by indictment under the laws of this state involving [but not limited to]: (xxxiv) The "Georgia Controlled Substances Act" in violation of Article 2 of Chapter 13 of this title; (xxxv) The "Dangerous Drug Act" in violation of Article 3 of Chapter 13 of this title; (xxxvi) Marijuana in violation of subsection (j) of Code Section 16-13-30" OCGA § 16-14-3 (5) (A).

80.   Plaintiff and class members desired to purchase a legal product that contained hemp-derived D8 THC, understood as being comprised of a non-de minimis legal amount of D9 THC; instead, the Products contain an illegal amount of hemp-derived D9 THC.  Honest testing can, and has, differentiated between

hemp-derived Delta 9 THC.

81.     Each Defendant who manufactured, tested, or sold, has made false and deceptive representations and omissions that are material in that they are likely to influence consumer purchasing decisions.

82.     In conspiracy with the other, Defendants misrepresented the Product through statements, omissions, ambiguities, half-truths, and/or actions that the product contained less than 0.3% D9 THC by weight.

83.     Plaintiff and the Class relied on the misrepresentations.

84.     Plaintiff and class members would not have purchased the Products or paid as much for the Products if the facts had been known and would not have suffered the same damages.

85.     Defendant's use or employment of artifice, unfair, or deceptive acts showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION

86.     Plaintiff, individually and on behalf of the Class, incorporates by reference all preceding paragraphs against Defendants.

87.     Defendant(s) had a duty to represent the Products truthfully, and Defendant breached this duty by understating the amount of D9 THC in the product and overstating the amount of D8 THC and otherwise inaccurately labeling one or

more of the Products

88.    This duty is based on each Defendant's position, holding itself out as having special knowledge and experience in this area as a manufacturer, distributor, or retailer.

89.    Each Defendant's representations took advantage of consumers' cognitive shortcuts made at the point of sale and their trust in each Defendant and their products.

90.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce, and did induce, their purchase of the Products.

91.    Plaintiff and class members would not have purchased the Products or paid as much for the Products if the facts had been known and, therefore, would not have suffered damages.

## **COUNT III – INTENTIONAL MISREPRESENTATION/FRAUD**

92.    Plaintiff incorporates by reference all preceding paragraphs against Defendants.

93.    Each Defendant misrepresented and/or omitted the attributes and qualities of one or more of the Products, that it was a legal product that contained D8 THC, containing less than 0.3% hemp derived D9 THC by weight, instead of an illegal amount of D9 and overstating the amount of D8 THC and otherwise

inaccurately labeled one or more of the Products.

94.    Each Defendant made material misrepresentations that they knew or should have known were false by stating the Products contained the legal type and amount of D9 THC as required by the CSA and by otherwise inaccurately labeling one or more of the Products.

95.    Each Defendant's fraudulent intent is evinced by its knowledge that the Product was inconsistent with its representations, as alleged above.

96.    Each Defendant knowingly made these representations with the intent that Plaintiff and Class members would purchase the Products.

97.    Plaintiff and Class members relied on these representations and were injured by purchasing illegal and worthless products.

## COUNT IV – UNJUST ENRICHMENT/DISGORGEMENT

98.    Plaintiff and the Class incorporate by reference all preceding paragraphs against Defendants.

99.    Each Defendant obtained benefits and monies by selling illegal Products to Plaintiffs and class members.

100.   Each Defendant knew the Products were not as represented and expected to profit from this knowledge to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of these illegally obtained profits.

101.   The Supreme Court held:

[I]f the new contract be fair and lawful, and the new consideration be valid and adequate, it will be enforced. If, however, it be unfair or fraudulent, or the new consideration so inadequate as to import fraud, imposition, or undue influence, it will be rescinded, and justice done to the parties.

*Dent v. Ferguson*, 132 U.S. 50, 67, 10 S. Ct. 13, 19, 33 L. Ed. 242 (1889).

102.   Each Defendant knew that the transaction between Defendant and Plaintiff and class members was illegal.   Therefore, these transactions should be rescinded, a common fund created, and the monies restored to Plaintiff and the Class.

## RICO COUNTS
## COUNT I – VIOLATION OF 18 U.S.C. § 1962(C)

103.   Plaintiff incorporates by reference the allegations of the preceding paragraphs.

104.   Hemp businesses that market their products as medicine should be held to reasonable production standards to ensure this "medicine" is effective.   But Defendants have intentionally refused to implement reasonable production standards, instead preferring to do business with labs like **Columbia Laboratories, Encore,** and **Pharmlabs SD** to provide intentionally inaccurate COAs. Plaintiff is filing this suit to vindicate her federal rights under RICO, 18 U.S.C. §§ 1961 et seq., the CSA, 21 U.S.C. §§ 801 *et seq.*, and the Supremacy Clause.

105.   Dealing in marijuana is racketeering activity under RICO, and those who engage in a pattern of racketeering activity through a corporation or other

enterprise are liable for three times the economic harm they cause, plus costs and attorneys' fees. Those who conspire with racketeers by agreeing to assist them are likewise liable. Accordingly, The Plaintiff and the Class ask this Court to award them the damages, costs, and fees to which they are entitled, *i.e.* disgorgement of the purchase price and treble damages.

106.   The individual defendants "conduct or participate, directly or indirectly, in the conduct of the LLC's affairs.   18 U.S.C. § 1962(c). Therefore, Defendants participate in the operation or management of the enterprise, see *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), because each Defendant is an enterprise member that plays a part in conducting the enterprise's affairs.  Each Defendant has contributed money and labor that furthered the pursuit of the profitable sale of illegal D8 vape pens whose D9 THC content has been misrepresented.

### Federal Law Prohibits the Manufacturing, Distribution, and Sale of Delta-9 Marijuana

107.   Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act. 84 Stat. 1236. Among the purposes of the CSA was to reduce drug abuse and the illegitimate traffic of controlled substances in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

108.   When it passed the CSA, Congress found that "[t]he illegal

importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," *id.* § 801(3). The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade. Defendants have conspired to import, manufacture, distribute, and possess illegal D8 THC vape pens that are marijuana under the CSA.

109.    The CSA categorizes drugs according to a series of schedules, with the most dangerous drugs falling under Schedule I. *See id.* § 812(b). Schedule I drugs have "a high potential for abuse." *Id.* § 812(b)(1). In enacting the CSA, Congress classified marijuana as a Schedule I drug. *Id.* § 812(c). Congress thus deemed marijuana to have a high potential for abuse. *Id.* § 812(b)(1). By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the sole exception being the use of the drug as part of a Food and Drug Administration preapproved research study. *Id.* §§ 823(f), 841(a)(1), 844(a).

110.    The large-scale manufacture and distribution of marijuana is a serious felony under the CSA. A first-time offender convicted of producing or distributing 1,000 or more marijuana plants is subject to a sentence of 10 years to life

imprisonment. *Id.* § 841(b)(1)(A). Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40 years imprisonment. *Id.* § 841(b)(1)(B). The distribution and sale of smaller amounts of marijuana are punishable by maximum sentences that can be as long as 20 years. *See id.* § 841(b)(1)(C), (D). The CSA also criminalizes the possession of marijuana. Unless otherwise authorized by federal law, possession of marijuana by a first-time offender is punishable by up to 1 year of imprisonment. *Id.* § 844(a).  Distillers like Pur ISO Labs create distillate that is not hemp derived and contains an excessive amount of D9.

111.     In addition to its prohibitions on the distribution, sale, and possession of marijuana, the CSA also forbids a wide range of other activities connected with the operations of a marijuana business. Thus, it is a crime to possess "any equipment, chemical, product, or material" with the intention of using it to manufacture marijuana, *id.* § 843(a)(6), or to distribute any such material with the knowledge that it will be used to manufacture marijuana, *id.* § 843(a)(7). The CSA bars the use of a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, *id.* § 843(b), and it is a federal crime to use the Internet to advertise the sale of marijuana, *id.* § 843(c)(2)(A). Reinvesting the proceeds from marijuana operations is also a crime, *id.* § 854(a), as is knowingly facilitating a financial transaction involving funds derived from manufacturing and

selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960. It is also a crime to knowingly lease, rent, maintain, manage, or control a place where marijuana is manufactured or sold. 21 U.S.C. § 856. Leading a group of five or more people who commit a continuing series of federal marijuana crimes is a grave offense. *Id.* § 848. Attempting or conspiring to commit most of those crimes is also a criminal offense. *See id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a). Each of the Defendants have violated these statutes by conspiring to manufacture and distribute the Products.

112.    These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear: marijuana is a dangerous drug that is banned throughout the United States. And because RICO defines most violations of the CSA as "racketeering activity," *see* 18 U.S.C. § 1961(1)(D), any business engaged in the manufacture and sale of illegal D8 vape pen (marijuana) is a criminal enterprise for purposes of federal law. Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability RICO imposes. *See id.* § 1962(c), (d). By virtue of the facts alleged herein, Defendants are liable to the Plaintiff and the Class for the purchase price of Plaintiff and the Class paid plus treble damages, fees, and costs.

### *The RICO Defendants Operate Racketeering Enterprises*

114.    Plaintiff and the Class purchased products Defendants warranted falsely as having a certain percentage of hemp-derived D8 THC, as well as less than

0.3% D9 THC by dry weight.

115.    To reassure herself that the product was legal, Plaintiff had the marijuana tested.  The tests revealed that the Manufacturer and Retailer Defendants routinely sell illegal D8 vape pens (marijuana) containing distillate manufactured by entities like Pure IsoLabs that has been falsely labeled to the Plaintiff and the Class by failing to disclose an excessive amount of D9 THC using distillate created by entities like Pur ISO using false lab results created by the Lab Defendants.  This is the RICO enterprise.

116.    The **Stiiizy** Defendants, **Savage Enterprises** Defendants, **L&K Distribution** Defendants, and **Cookies** Defendants sell illegal D8 vape pens (marijuana) with different types and amounts of THC to retailers like **Cloud 9**, **Element Vape**, **Xhale City**, and **Xhale Franchise** who then sell the illegal D8 vape pens to the Class.  In essence, the Plaintiff and the Class are paying for legal hemp-derived THC but are receiving illegal marijuana, which has created millions of dollars of fraudulent profit.  These actions damage Plaintiff and Class's property.

117.    The Manufacturer and Retailer Defendants knew the Lab Defendants were misrepresenting the THC amounts because they had lab shopped to obtain the results they were seeking.  When the honest labs refused to issue false COA's, the manufacturers would not do business with them.

118.    Indeed, despite being sued, the Savage Defendants continued to sell

the illegal D8 vape pen product in this RICO enterprise with, upon information and belief, the express consent of the Board of Directors.

119.    The Lab Defendants also allow testing samples to be selected by employees whom the Manufacturer employs. This is a conflict of interest.  This conflict of interest has allowed the Manufacturer Defendants to create false test results because the samples may not represent the product sold.

120.    So, the Lab Defendants, in conspiracy with the manufacturers and the retailers, the individuals, and John Doe Defendants have misrepresented the amount of D9 THC in the hemp product Plaintiff brought to facilitate the sale of a controlled substance.

121.    To facilitate this fraud, the Lab Defendants knowingly created false test results that were advertised over the internet hundreds of times for publication and marketing through the wires, and such activity is wire fraud.

122.    Defendants intended that Plaintiff and the Class rely on these test results, and Plaintiff and the Class reasonably relied on the test results to their detriment.

123.    The Lab Defendants understated the amount and type of D9 THC contained in the Products.

124.    Leasing or maintaining property for the sale and distribution of marijuana is a crime under 21 U.S.C. § 856 and is racketeering activity under 18

U.S.C. § 1961(1)(D). The Manufacturer and Retailer Defendants have leased or maintained property for the sale and distribution of illegal D8 vape pens (containing unlawful amounts of marijuana).

125. Defendants, together with their respective accountants, law firms, and bankers, sued as John Does 200-1000, also conspired and agreed to work together so that the Defendants could sell D8 vape pens containing unlawful amounts of marijuana as legal hemp-derived THC and contribute to the ongoing violations of the CSA inherent in those operations. Entering such an agreement is conspiracy under 21 U.S.C.§ 846 and racketeering activity under 18 U.S.C. § 1961(1)(D).

126. Each Defendant used the telephone, email, internet, or other communication facilities to take steps in furtherance of their efforts to sell D8 vape pens that had been mislabeled unlawfully. Such uses of communication facilities violate 21 U.S.C. § 843(b) and are racketeering activity under 18 U.S.C. § 1961(1)(D).

127. Aided by the other Defendants, the retailer and the Manufacturer Defendants advertise D8 vape pens containing unlawful amounts of marijuana for sale and their services over the Internet in violation of 21 U.S.C. § 843(c)(2)(A) in interstate commerce, and this is racketeering activity under 18 U.S.C.§ 1961(1)(D).

128. The John Doe Manufacturer and Lab Defendants together formed an open-ended association-in-fact enterprise for the purpose of selling illegal D8 vape

pens marijuana across the United States and selling it to retailers across the nation like **Cloud 9**, **Element Vape**, and **Xhale City, and Xhale Franchise** for purchase by the Plaintiff and the Class. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the manufacture, sale, and distribution of marijuana that none of them could have achieved individually.

129.    All of the RICO defendants and John Doe Defendants have contractual and other relationships with each other, and they are collaborating to contribute to the association-in-fact enterprise's efforts to sell marijuana and thereby engage in an ongoing pattern of racketeering activity.

130.    All of the RICO defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of manufacturing and selling illegal D8 vape pens (marijuana). As stated above, that goal could only be accomplished through numerous CSA violations and wire fraud violations. Each such violation of the CSA is a racketeering activity, and all of the RICO defendants thus knew and intended that in agreeing to assist the enterprise, they would help it carry out a pattern of racketeering activity.

### *Plaintiff and Class are damaged in their property.*

131.    Plaintiff and the Class bought what they believed to be a legal hemp-derived D8 THC product, but the Products sold contained unlawful amounts of

marijuana.

132.    In fact, Plaintiff purchased marijuana tested, manufactured, and marketed by Defendants as having specific percentages of D9 THC.

133.    Plaintiff, believing that the D8 product was hemp and accurately labeled, used the labels to determine which products to purchase because she did not want to break the law.

134.    Plaintiff had the illegal D8 vape pens tested at another lab. The tests revealed that product labels using Defendants test results significantly understated THC content.

135.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants each violated this provision of 18 U.S.C. § 1962.

136.    RICO provides, inter alia, "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce." 18 U.S.C. § 1962(c). "Any

person injured in his business or property by reason of a violation" of this or the other substantive provisions of section 1962 "may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Thus, to establish their RICO claims, plaintiffs must prove "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). Regarding the first element of that test, a violation of section 1962(c) of RICO requires proof that defendants "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 882 (citation and internal quotation marks omitted).

137.    An "enterprise" under RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact." See *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001) An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct. Such an entity "need not have a hierarchical structure or a 'chain of command. . . . for it to exist requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Safe Streets*, 859 F.3d at 882-83 (citations and

internal quotation marks omitted).

138.    Defendants test, manufacture, and sell the illegal D8 vape pens (marijuana) and therefore formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with other entities like, distributors, hired private accountants, private lawyers, banks, and Real Estate Holding companies that own the facilities that manufacture the illegal D8 vape pens, collaborating to develop D8 vape pens to sell, all named as John Does 150-200.  This enterprise enables the RICO Defendants to achieve their collective purpose more efficiently.

139.    Funding, goods, and services procured by the enterprise have moved into interstate commerce, and the enterprise has transported marijuana in interstate commerce. The enterprises alleged herein affect interstate commerce. See *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2106, 195 L.Ed.2d 476 (2016). See also *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (noting term "affecting interstate or foreign commerce" conveys Congress's intent to exert its full power under the Commerce Clause). The Tenth Circuit has determined as much already. *Safe Streets*, 859 F.3d at 883 ("Cultivating, distributing, and selling marijuana . . . undisputedly affects interstate commerce.").

140.    The Manufacturing Defendants purchase distillate from entities like **PUR ISO LABS, LLC**.  Savage purchased distillate from Pur Iso, who then used

the distillate to manufacture illegal D8 vape pens. The distillate contains heavy metals, mycotoxins, and more than 0.3% D9 THC, by dry weight.  The other distillate makers are sued as John Does 100-120.

141.    Defendants, their respective officers, directors, and John Does have each conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.  "Racketeering activity" under RICO consists of "dozens of state and federal offenses, known in RICO parlance as predicates," including most specifically for present purposes, "any offense involving . . . a drug-related activity that is 'punishable' under federal law." *RJR Nabisco*, 136 S.Ct. at 2096. As the Tenth Circuit determined, "cultivating marijuana for sale . . . is by definition racketeering activity." *Safe Streets Alliance*, 859 F.3d at 882. See 18 U.S.C. § 1961(1)(D) (racketeering activity includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance"). See also 21 U.S.C. § 802(16) (classifying marijuana as a controlled substance under the CSA).  The Defendants, and their officers, in association with each other, their respective banks, accountants, lawyers, and suppliers, entered into an agreement under which Defendants will commit numerous crimes under the CSA, and that agreement violates 21 U.S.C. § 856. They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of the manufacturer Defendant's open-ended illegal D8

vape pens (marijuana) business. One or More Defendants continue their business even today, even though they were on notice that these D8 vape pens contained illegal amounts of D9 THC.

143.    On information and belief, the Manufacturer and Retail Defendants used wire communication facilities to sell the illegal D8 vape pens (marijuana) in furtherance of their drug conspiracy in violation of 21 U.S.C. § 843(b).

144.    Defendants possess materials, goods, and facilities for the manufacture of marijuana in violation of 21 U.S.C. § 843(a)(6) obtained in interstate commerce and continue to purchase solvents and other chemicals necessary to manufacture and test illegal D8 vape pens (marijuana). All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

145.    Defendants have engaged in a "pattern" of racketeering activity established by proof of "a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *RJR Nabisco*, 136 S.Ct. at 2096-97. "It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle," as well as the actuality or threat of continued criminal activity, which establishes the necessary pattern. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238-39, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of

commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*, 109 S.Ct. at 2901 (citation and internal quotation marks omitted). Continuity may be shown where "the predicates are a regular way of conducting defendant's ongoing legitimate business[.]" *Id.* at 2902. Both these elements are satisfied factually in this case. Upon information and belief, Defendants have manufactured and sold illegal D8 vape pens continuously since at least 2021.

146.    Each act of advertisement, email solicitation, and sale constitute a separate violation of the CSA and wire fraud and, therefore, a predicate RICO offense. These acts are related to one another in type and purpose. Moreover, Defendants' manufacture and sale of illegal D8 vape pens (marijuana) is their "regular way of doing business."

147.    The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class's property by selling them illegal marijuana using the wires, email, and the US Mail.  Each separate solicitation and sale is a predicate act. The websites operated by the Defendants are:

    a.  **Cloud   9   Online   Smoke   &   Vape,   LLC: https://www.cloud9smokeco.com/**

    b.  **Green   Rush   LLC   dba   Xhale   City: https://www.xhalecity.com/**

    c.  **TheSY LLC dba Element Vape: https://www.element.com/**

    d. **Stiiizy, LLC.: https://www.stiiizy.com/**

    e. **Savage Enterprises: https://savageenterprises.com/**

    f. **Delta Extrax: https://www.deltaextrax.com/**

    g. **L&K Distribution: https://www.lkdistro.com/**

    h. **Cookies Creative Consulting & Promotions: https://cookies.co/**

    i. **Columbia Laboratories: https://www.columbialaboratories.com/**

    j. **PharmLabs SD: https://lobby.pharmlabscannabistesting.com/**

    k. **Encore: https://encorelabs.com/**

    l. **Pur ISO Labs LLC: https://purisolabs.com/**

148.    Each solicitation for the sale of illegal D8 vape pens is a separate predicate offense. Racketeering activities undertaken by the Defendants have injured the Plaintiff and the Class's property by selling them legal hemp that was actually illegal marijuana.

149.    The racketeering activities of Defendants directly and proximately injured Plaintiff and the Class's property by selling them D8 products that contained illegal amounts of D9 THC. Defendants misrepresented THC values for commercial gain and to mislead Plaintiff and the Class, who could not know what was truly in

the product.  Thus, Plaintiff and the Class are entitled to recission and a disgorgement of the purchase price.

150.    Plaintiff and the Class have been damaged in their property by being defrauded of the purchase price and therefore seek treble damages, fees, and costs.

## COUNT II - Violation of 18 U.S.C. § 1962(d)
### *Against All RICO Defendants*

151.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

152.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Plaintiff and the Class have been damaged in their property by virtue of the Defendant's sale of illegal D8 vape pens with the assistance and knowing involvement of Lab Defendants, where the Defendants, through one or more of their respective members, requested, and the Labs agreed to understate THC values and conceal harmful substances in the marijuana.  This enterprise was aided and abetted by the other Defendants.

153.    The Defendants, for their mutual and individual profit, agreed and conspired with each other and their respective John Does to violate 18 U.S.C. §

1962(c) by forming an association-in-fact enterprise for the purpose of selling illegal D8 vape pens marijuana across the US and selling it throughout the US, after testing with the Lab Defendants who agreed to provide false THC values and conceal harmful substance in the marijuana. The RICO Defendants knew that this was patently unlawful under the CSA. This scheme could only be accomplished through a pattern of racketeering activity, for maintaining premises at which marijuana is manufactured and sold, manufactured and selling marijuana, testing the marijuana, and possessing the goods and materials needed to manufacture and sell illegal D8 vape pens (marijuana) are all crimes under the CSA. *See, e.g.*, 21 U.S.C. §§ 841(a), 843(a)(6), 856.

154. Funding, goods, and services procured by the Defendants in furtherance of their association-in-fact enterprise with each other and the respective John Doe Defendants to manufacture illegal D8, vape pens (marijuana) have moved in interstate commerce, and the enterprise plans to sell marijuana across the US that affects interstate commerce.

155. The Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c). All of the RICO Defendants violated 21 U.S.C. § 846 by agreeing and conspiring to assist in the establishment of each Manufacturer Defendant's creation, distribution, and sale of illegal D8 vape pens. Defendants and their agents entered into an agreement to sell marijuana and

test marijuana in violation of 21 U.S.C. § 856.

156.   Racketeering activities undertaken in furtherance of the RICO Defendants' conspiracy to violate 18 U.S.C. § 1962(c) have injured the property of Plaintiff and the Class by selling them illegal marijuana represented as legal hemp.

157.   The racketeering activities of Defendants directly and proximately injured the property of Plaintiff and the Class by selling them illegal D8 vape pens, Defendants misrepresented THC values for commercial gain and to mislead Plaintiff and Class, who could not know what was truly in the product.  Plaintiff and the Class have been damaged in their property by being defrauded of the purchase price and therefore seek treble damages, fees, and costs.

158.   The individual Defendants "conduct or participate, directly or indirectly, in the conduct of their respective entities' affairs.  18 U.S.C. § 1962(c). Therefore, the individual Defendants participate in the operation or management of the enterprise, see *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), because each Defendant, together and alone, participates as an enterprise member that plays a part in conducting the enterprise's affairs, the sale of illegal D8 vape pens containing marijuana.  Each Defendant has contributed money and labor that furthered the pursuit of the profitable sale of marijuana whose THC content has been overstated.

## <u>JURY DEMAND AND PRAYER FOR RELIEF</u>

**Plaintiff, HANNAH LEDBETTER, Individually and On Behalf of All Others Similarly Situated, demands a jury trial on all issues**.

**WHEREFORE**, Plaintiff, **HANNAH LEDBETTER, Individually and On Behalf of All Others Similarly Situated,** prays for judgment:

a. Declaring this a proper class action, certifying Plaintiff as representative, and the undersigned as counsel for the class;

b. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

c. Injunctive relief to remove, correct, and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

d. Awarding monetary pursuant to any statutory claims and interest in accordance with the common law and other statutory claims;

e. Awarding costs and expenses, including reasonable attorneys' fees for Plaintiff's attorneys and experts;

f. Declaratory Judgment that the products Plaintiff purchased contained more than 0.3% D9 THC by weight and overstated the amount of D8 THC;

g. Treble damages;

h. Disgorgement or recission; and

i.  Any other and further relief as the Court deems and proper.

Respectfully submitted this 6th day of February, 2024,

**STUART & JOHNSTON, LLC**
358 Roswell Street, NE
Suite 1140
Marietta, Georgia 30060
(404) 662-2616


By:      */s/ Andrew H. Stuart*
Andrew H. Stuart, Bar No. 689252
astuart@stuartandjohnston.com


**SUTTER & GILLHAM, P.L.L.C**.
Luther Oneal Sutter, Esq., ARBN 95-031
*Pro hac vice to be applied for*
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501/315-1910 Office
501/315-1916 Facsimile

***Attorneys for the Plaintiff***