**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| HANNAH LEDBETTER,<br>    Plaintiff,<br><br>                    v.<br><br>CLOUD 9 ONLINE SMOKE & VAPE, LLC,<br>*et al.*,<br>    Defendants. | Civil Action No.<br>1:24-cv-00538-SDG |

## OPINION AND ORDER

When Plaintiff Hannah Ledbetter found out that the vape pens she purchased contained higher levels of THC than that permitted by federal law, she proceeded as any "regular consumer" of vape pens would:[1] she filed a putative class action to try to take down the entire vaping industry.

Before the Court is a series of motions filed by the various industry Defendants named in Ledbetter's Second Amended Complaint (SAC) [ECFs 219, 229–36]. For the following reasons, Defendants' motions to dismiss are, for the most part, **GRANTED**.

The motions to dismiss for failure to state a claim brought by Defendants Stiiizy, L&K Distribution (L&K), Cookies Creative Consulting (Cookies), Savage Enterprises, and Encore Labs [ECFs 219, 230, 231, 235, 236] are **GRANTED** as to

---

[1]    Ledbetter is a self-proclaimed "regular consumer" of delta-8 products. *See* ECF 200, ¶ 34.

the federal RICO claims, and those claims are dismissed with prejudice. The motions to dismiss for lack of personal jurisdiction brought by Stiiizy, L&K, Cookies, and Matthew Winters, Matthew Montesano, and Jon Dougherty [ECFs 232, 233, 234, 229] are **GRANTED**. The motion to dismiss for lack of personal jurisdiction brought by Savage Enterprises [ECF 229] is **DENIED**. The motions to dismiss for lack of subject matter jurisdiction brought by Cloud 9, Green Rush (Xhale City),[2] and TheSY (Element Vape)[3] [ECFs 232–34] are **GRANTED**. And lastly, because the Court finds that it lacks subject matter jurisdiction over the remaining state law claims, those claims are **DISMISSED without prejudice**. This case will be **CLOSED**.

## I.    BACKGROUND

### A.    Factual and Procedural History

This case arises out of an alleged multi-state conspiracy to sell vape pens containing Delta-9-tetrahydrocannabinoal (more commonly known as, and referred to in the SAC as, Delta-9 THC) at concentrations beyond the permissible limit under federal law.[4] Delta-9 is well known as the main psychoactive

---

[2]    Green Rush conducts business as Xhale City, which is how this court will refer to the entity. *See id.* ¶ 4.

[3]    TheSY, LLC conducts business as Element Vape, which is how the Court will refer to the entity. *See id.*

[4]    *See, e.g., id.* ¶ 436.

component of cannabis,[5] a plant whose legal use was for a long time severely restricted by the federal Controlled Substances Act (CSA). *See generally Standing Akimbo, LLC., v. U.S.,* 141 S. Ct. 2236, 2237–38 (2021) (Statement of Thomas, J., respecting the denial of certiorari) (describing the evolution of federal cannabis regulation and enforcement). Those federal restrictions were relaxed somewhat by the Agriculture Improvement Act of 2018—the so-called "Farm Bill"—which legalized cannabis-derived products with a Delta-9 concentration of "not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1) (defining hemp); *see also Earth Sci. Tech, Inc. v. Impact UA, Inc.,* 809 F. App'x 600, 608 (11th Cir. 2020) (noting that the Farm Bill exempts hemp from the CSA unless it has more than 0.3% THC).

Ledbetter alleges that, in November 2023, she bought what were advertised as Farm Bill-compliant vape distillates that contained less than 0.3% dry weight Delta-9.[6] She bought an assortment of these products from an assortment of retailers, spending $146.74.[7] But when Ledbetter—seeking to "reassure herself"

---

[5]    For a fuller description of cannabis, see generally NIDA, *Cannabis (Marijuana)*, National Institute on Drug Abuse (Sep. 24, 2024), https://nida.nih.gov/research-topics/cannabis-marijuana. For purposes of this Order, "cannabis" refers to the plant with the scientific name *Cannabis sativa L. Id.*; *see also* ECF 200, ¶ 37.

[6]    ECF 200, ¶¶ 5, 16–17, 21, 439.

[7]    *Id.* ¶¶ 16–17, 21.

that the vapes were legal—had the distillate tested,[8] she came to learn that they contained excessive Delta-9 levels ranging from 230 to 703 percent above the legal limit.[9] As she alleges in the SAC, she "unknowingly purchased . . . five products that were Schedule 1 Controlled Substance[s]."[10]

These products include the following:[11]

- COOKIES, with a strain name of Huckleberry Gelato, manufactured by Cookies for a purchase price of $22.99, plus tax and shipping costs, that included a Delta-9 percentage variance of 640%, above the legal limit;

- EXTRAX, with a strain name of Forbidden Jelly, manufactured by Savage Enterprises for a purchase price of $24.48 that included a Delta-9 percentage variance of over 456%, above the legal limit;

- EXTRAX, with a strain name of Power Plant, manufactured by Savage Enterprises for a purchase price of $58.29 that included a Delta-9 percentage variance of over 436%, above the legal limit;

---

[8]   *Id.* ¶ 440.

[9]   *Id.* ¶ 47.

[10]   *Id.* ¶ 42.

[11]   *Id.* ¶ 42-(a)-(e); ¶ 47(a)-(e).

- LOOPER, with a strain name of Blue Gusherz, manufactured by L&K for a purchase price of $17.99, plus tax and shipping costs that included a Delta-9 percentage variance of 230%, above the legal limit; and

- STIIIZY HEMP, with a strain name of OG Kush, manufactured by Stiiizy for a purchase price of $22.99, plus tax and shipping costs that included a Delta-9 percentage variance of over 703%, above the legal limit.

In the SAC, Ledbetter makes clear that she did not want products with such high qualities of Delta-9.[12] She acknowledges the Department of Justice has "largely declined" to prosecute violations of federal cannabis laws.[13] Despite this non-enforcement, Ledbetter asserts, cannabis remains "just as illegal" as it was when Congress first passed the CSA in 1970.[14] She emphasizes that manufacturing such cannabis products with more than 0.3% Delta-9 THC "is an illegal activity" under both state and federal law.[15]

---

[12]  *Id.* ¶ 42.

[13]  ECF 200, ¶ 50.

[14]  *Id.* ¶ 51.

[15]  *Id.* ¶¶ 53, 434.

Ledbetter thus filed a putative class action against a suite of companies and individuals allegedly involved in the manufacture, testing, distribution, and sale of illegal vapes, asserting the following claims:

- Negligence, negligent misrepresentation, intentional misrepresentation, and unjust enrichment, all under Georgia common law;

- Strict products liability under O.C.G.A. § 51-1-11 (both failure to warn and manufacturing defect);

- Violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act under both federal and Georgia law (18 U.S.C. § 1962(c) and O.C.G.A. § 16-14-4, respectively); and

- RICO conspiracy under federal law (18 U.S.C. § 1962(d)).

Ledbetter initially filed her complaint in January 2024.[16] In March, she filed her first amended complaint (FAC).[17] Defendants subsequently moved to dismiss for failure to state a claim.[18] This Court held oral argument in November 2024 on

---

[16]   ECF 1.

[17]   ECF 69.

[18]   ECFs 148, 150, 152, 153, 154, 155, 156, 157, 158.

the motions to dismiss and on whether a preliminary injunction was appropriate.[19] The Court found a preliminary injunction was not warranted.[20]

At the close of oral argument, Ledbetter asked the Court for leave to amend the FAC, citing newly discovered evidence involving one of the named defendants as reason for the limited amendment.[21] The Court granted leave, allowing Ledbetter to include the additional factual allegations that the newly discovered evidence might support.[22] What Ledbetter filed was far beyond the limited amendment permitted by the Court's leave: the SAC is over two-and-a-half times as long as the FAC, containing over three times as many paragraphs and asserting over four times as many claims.[23] The Court denied as moot all pending motions and ordered the parties to confer and file a joint briefing schedule.[24] The parties complied, and Defendants subsequently filed their various motions to dismiss.

---

[19]   *See* ECF 238 (transcript).

[20]   *See* ECF 199.

[21]   ECF 238, 86–88.

[22]   ECF 199.

[23]   *See generally* ECF 206, at 2–3; ECF 206-1 (showing how the SAC amended the FAC); ECF 209.

[24]   ECF 209, at 2–3.

### B.    An Overview of the Parties and the Defendants' Motions

In total, Ledbetter brings nine different causes of action against various combinations of Defendants, totaling 42 separate claims. Ledbetter organizes her claims against the Defendants based on the products they have allegedly played a role in producing or selling. She also refers collectively to groups of defendants—across product lines—by their role in the respective supply chain of each product. There are the "Manufacturer Defendants," consisting of Stiiizy, L&K, Cookies, and Savage Enterprises;[25] the "Laboratory Defendants," consisting, now,[26] of only Encore Labs and various "John Does";[27] and the "Retail Defendants," consisting of Cloud 9, Element Vape, Xhale City, and Xhale Franchise.[28]

Against different groups of defendants related to each product she purchased, Ledbetter brings six counts of state law non-RICO claims; in other words, she raises 30 state law non-RICO claims.[29] Substantively, however, each count consists of largely the same allegations, copied-and-pasted from one

---

[25]   ECF 200, ¶ 2.

[26]   After filing the SAC, Ledbetter voluntarily dismissed Pharmlabs, *see* ECFs 215–16, which the SAC characterizes as a lab defendant. ECF 200, ¶ 3.

[27]   ECF 200, ¶ 3.

[28]   *Id.* ¶ 4.

[29]   *See, e.g., id.* ¶¶ 99–166 (bringing six state law non-RICO claims under the title of "Extrax – Forbidden Jelly" against Savage Enterprises and Pur Iso Labs). The remaining state law non-RICO claims against other Defendants proceed in this fashion.

grouping of defendants to another, essentially alleging the various defendants engaged in the same wrongdoing in their respective production and sale of each product.

Ledbetter organizes her RICO claims in a similar fashion. She identifies what she believes are four vertical enterprises relating to the production and sale of the various products she purchased. There are the "Savage Defendants," the "Cookies Defendants," the "L&K Defendants," and the "Stiiizy Defendants."[30] Against each grouping of defendants, Ledbetter raises federal substantive RICO, federal RICO conspiracy, and Georgia RICO claims—labeled, confusingly, as Counts I, II, and III; in total, she raises 12 RICO claims.[31] Again, substantively, these claims consist of largely the same allegations, suggesting that each vertical enterprise operates similarly to each other and engages in similar wrongdoing.

According to Ledbetter, the conspiracy within each enterprise is structured as follows. Distillate makers[32] produce distillate, the raw material to be used in vape pens, with intentionally high levels of Delta-9 THC.[33] The Manufacturer

---

[30]  *See, e.g., id.* ¶¶ 470, 503, 535, 567.

[31]  *See id.* ¶¶ 470–502 (This same pattern of claims and allegations is repeated against the three other alleged enterprises).

[32]  Ledbetter has brought claims against only one named distillate maker, Puro Iso Labs LLC, *see id.* ¶ 73, who is now in default, *see* ECF 204.

[33]  ECF 200, ¶¶ 73–79.

Defendants then purchase the distillate from the distillate makers, and they use the distillate to manufacture cannabis products with excessively high levels of Delta-9 THC, like the vape pens that Ledbetter purchased.[34] The Manufacturer Defendants then have their products tested by the Laboratory Defendants, who produce fraudulent Certificates of Analysis (COAs), which in turn allows the Manufacturer Defendants to distribute the noncompliant cannabis products to the Retail Defendants.[35]

Because Ledbetter repeats factual allegations and legal arguments across groupings of defendants and purported enterprises, the Court will discuss the multiple counts by claim name and address their sufficiency collectively wherever practical. This largely coincides with how the Defendants have structured their motions to dismiss.[36]

The Defendants jointly move to dismiss all 42 claims (the "Joint Motion"), arguing that fatal deficiencies exist across all counts, such that each can be dismissed for failure to state a claim under Federal Rule of Civil Procedure

---

34   *Id.* ¶¶ 487, 519, 551, 583.

35   *Id.* ¶ 441. Ledbetter does not include any of the Retail Defendants in her RICO claims. *Id.* at 116, n.1.

36   *See, e.g.,* ECF 219.

12(b)(6).[37] They also make collective arguments against the exercise of personal jurisdiction and subject matter jurisdiction.[38]

Additionally, individual Defendants and smaller groups of Defendants move to dismiss on more individualized grounds. The Manufacturer and Laboratory Defendants all largely argue that the Court lacks personal jurisdiction over them, especially if the federal RICO claims are dismissed.[39] The Retail Defendants all argue that the Court lacks subject matter jurisdiction to hear Ledbetter's claims against them, should the Court find that Ledbetter fails to state a federal RICO claim against the Manufacturer and Laboratory Defendants.[40] And three individual officers or shareholders of Savage Enterprises—Winters, Montesano, and Dougherty—argue that, despite being named as Defendants, it appears that the SAC does not actually state any causes of action against them, and in any event the Court lacks personal jurisdiction over them.[41] Most of these motions also raise arguments, similar to those made in the Joint Motion, that the claims against them should be dismissed for failure to state a claim.

---

[37]   *See, e.g., id.,* at 11–12, 30.

[38]   *See, e.g., id.,* at 27, 30 n.13.

[39]   *See generally* ECFs 230, 231, 235, 236.

[40]   *See generally* ECFs 232–34.

[41]   *See generally* ECF 229.

**II.    The federal RICO claims must be dismissed.**

The Court will first determine whether the federal RICO claims survive dismissal under Rule 12(b)(6) because this determination affects whether the Court has jurisdiction—both subject matter and personal—for the remaining state law claims. The RICO statute authorizes nationwide service of process, *see generally* 18 U.S.C. § 1965, but the circuit courts are divided over whether RICO's nationwide service provision first requires at least one defendant to have minimum contacts in the forum before a plaintiff can bring all members of an alleged RICO conspiracy before the court. *See generally* Jonathan R. Nash, *National Personal Jurisdiction*, 68 EMORY L. J. 509, 527 n.104 (2019) (noting the circuit split). The Eleventh Circuit is in the minority of circuits who conclude that Section 1965 confers personal jurisdiction over every civil RICO defendant, regardless of whether any defendant has a connection with the forum. *See id.; Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941–42 (11th Cir. 1997). Under *Republic of Panama*, a district court in the Eleventh Circuit has personal jurisdiction over all defendants if the plaintiff states a "colorable" RICO claim and the defendant has minimum contacts with the United States. *Republic of Panama*, 119 F.3d at 941–42.

Arguing that the SAC fails to assert RICO claims against a defendant with minimum contacts in the forum, the Defendants urge the Court to dismiss all RICO

claims for lack of personal jurisdiction, "notwithstanding *Republic of Panama*."[42] The Court declines to go against binding Eleventh Circuit precedent. Were there ever a case to challenge the Eleventh Circuit's position in this circuit split, it is not this one: the RICO claims can be dismissed here because they fail to state a claim. The Court notes, however, that for purposes of deciding the Defendants' 12(b)(6) motions on the RICO claims, the SAC at least states a "colorable" RICO claim because it is "not 'so insubstantial, implausible, or otherwise completely devoid of merit' as to deprive [Ledbetter] of the right to utilize RICO's nationwide service of process provision." *Id.* at 942 n.9.

### A.    Legal standard on a motion to dismiss for failure to state a claim.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts

---

[42]    ECF 219, at 30.

may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290; *see also Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (deeming dismissal appropriate under 12(b)(6) if the factual allegations are not "enough to raise a right to relief above the speculative level.").

A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### B. The substantive RICO claims must be dismissed because Ledbetter fails to plausibly allege the existence of an enterprise.

Within what Ledbetter labels as the "RICO Counts," each Count II alleges Defendants conducted or participated in a RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Congress passed the RICO Act in 1970 to combat the rise of organized criminal activity. *Russello v. United States*, 464 U.S. 16, 26–27 (1983) (analyzing the legislative history of the RICO

statute for legislative intent). The statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In addition to its criminal proscriptions, the statute provides a private cause of action to "[a]ny person injured in his business or property" by a violation of § 1962(c). *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 349 (2016) (quoting 18 U.S.C. § 1964(c)).

Though the RICO Act was originally enacted to combat organized crime, the Supreme Court has made clear that the statute's application is not limited to only "mobsters" or organized criminals in the traditional sense. *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985); *U.S. v. Turkette*, 452 U.S. 576, 580 (1981) (noting that RICO's enterprise definition includes "legitimate and illegitimate" entities). Rather, "the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes." *Boyle v. United States*, 556 U.S. 938, 944 (2009) (quotation omitted). Still, "RICO is not a run-of-the-mill consumer protection statute." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1219 (S.D. Fla. 2021) (internal citations omitted).

A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed; (2) an enterprise;

15

(3) through a pattern; (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused; (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1208 (11th Cir. 2020). "If a plaintiff fails to adequately plead any one of these elements," they have failed to state a claim upon which relief may be granted, and their complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Id.* Here, the Court concludes that Ledbetter has failed to plausibly allege the existence of a RICO enterprise, and this alone is fatal to her RICO claims. Indeed, Ledbetter's pleading deficiencies span across all of her substantive federal RICO counts, such that not one of the four association-in-fact enterprises that she describes meets the definition of an enterprise under RICO.

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. To plead an association-in-fact enterprise, the Supreme Court has held that a plaintiff must allege that a group of persons shares three structural features: "(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017)

16

(quoting *Boyle*, 556 U.S. at 944). Here, Ledbetter failed to plausibly allege that the participants in any of the four purported enterprises shared a qualifying purpose.

An association-in-fact enterprise will have "'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." *Cisneros*, 972 F.3d at 1211 (quoting *Turkette,* 452 U.S. at 583). A shared, abstract interest, such as a "generally shared interest in making money," does not satisfy the purpose prong. *Id.* (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352–53, n.3 (11th Cir. 2016)). Instead, if the various participants' ultimate purpose is "to make money for themselves," a RICO plaintiff must plausibly allege that participants "shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* at 1211–12 (citing *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1284–85 (11th Cir. 2006), a*brogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714–15 (11th Cir. 2014) (finding sufficient a common purpose of making money by hiring undocumented immigrants)). Moreover, a RICO plaintiff must allege facts showing that the defendants "participate[d] in the operation or management of the enterprise itself," and "conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 185 (1993) (emphasis in original).

In *Cisneros*, a case involving an alleged conspiracy to sell sick puppies for a premium price, the Eleventh Circuit concluded that the plaintiff had not alleged

17

facts that "plausibly support the inference that the defendants were collectively trying to make money in pet sales *by fraud*" (which is a common purpose sufficient to find a RICO enterprise), as opposed to the "'obvious alternative explanation' that they were simply trying to make money in pet sales," which is not a qualifying RICO purpose. 972 F.3d at 1211 (quoting *Twombly*, 550 U.S. at 567) (emphasis in the original). There, the plaintiff only provided high-level generalizations about the roles of a franchisor, franchisee, and a pet care business in the sale and care of puppies; devoid of conclusory allegations that the companies carried out their business functions to further a shared purpose of committing fraud, the plaintiff's allegations merely described "legitimate businesses" selling products and providing services. *Id.* at 1212–15. Repeatedly, the Eleventh Circuit noted the absence of any "concrete factual allegations" for which the court could infer a fraudulent purpose of any individual defendant. *See id.* at 1212–13 (noting the absence of concrete facts as to fraud by the franchisor, franchisee, and pet care business). And the Court concluded that even if it could assume a fraudulent purpose on behalf of the franchisee, it could not infer that the illicit purpose was shared *among* the defendants. *Id.* at 1213 ("Cisneros was required to allege not just that Petland Kennesaw had a fraudulent purpose, but that it was a *common* purpose, formed in collaboration with Petland, PAWSitive, and the preferred veterinarians.") (emphasis in the original).

18

Similar shortcomings plague the SAC. Ledbetter offers little more than conclusory and unsupported generalizations about a RICO enterprise that conveniently matches the typical supply chain for hemp products. The SAC is devoid of concrete facts sufficient to suggest that Defendants were operating with a common purpose to make money in the fraudulent or illegal sale of vape pens, rather than the "obvious alternative explanation" that they were each trying to make money, independently, in their respective role in the supply chain. Removing hyperbole and legal conclusions, the SAC merely describes links in a supply chain connected by ordinary commercial dealings.

At the highest order of abstraction, Ledbetter alleges throughout each Count II that the distillate makers, Manufacturer Defendants, and Laboratory Defendants "together formed an open-ended association-in-fact enterprise for the purpose of selling illegal D8 vape pens, marijuana, across the United States and selling it to retailers."[43] Yet Ledbetter offers no concrete facts to support this assertion. For instance, Ledbetter alleges multiple times that each Manufacturer Defendant "purchased distillate" from a distillate maker, as if this transaction alone is enough to show common purpose.[44] It is not. Without any plausible factual allegations that the Defendant manufacturers and distillate makers had agreements to produce

---

[43]   ECF 200, ¶¶ 488, 520, 552, 584.

[44]   *Id.* ¶¶ 487, 519, 551, 583.

19

vape pens with illegal amounts of Delta-9 THC, these assertions merely show the routine transactions between participants in a supply chain for hemp products. Ledbetter repeatedly alleges that the Manufacturer Defendants and Laboratory Defendants "have contractual and other relationships with each other,"[45] but without plausibly alleging the substance of these agreements and relationships, this again only shows routine commercial dealings. *See id.* at 1212 (considering indicative of plaintiff's pleading deficiencies that she failed to allege the "substance of any . . . communication" between defendants). Indeed, it would be strange if the parties *did not* have contracts relating to the production and sale of a final product.

Though Ledbetter alleges in conclusory fashion that the Laboratory Defendants issued fraudulent COAs,[46] her allegations do not assert that any Laboratory Defendant was doing so because of some identifiable agreement it had with a specific Manufacturing Defendant; independent conduct—even illegal conduct—cannot satisfy RICO's shared purpose requirement. *See Ray*, 836 F.3d at 1354 (concluding that allegations about one member's fraudulent conduct say nothing about an "allegedly fraudulent purpose" shared among defendants). She also vaguely alleges that "the Manufacturer Defendants . . . lab-shopped" until

---

[45]    *Id.* ¶¶ 489, 521, 553, 585.

[46]    *Id.* ¶¶ 83, 441.

they found Laboratory Defendants willing to issue false COAs,[47] but this allegation, devoid of any allegations relating to specific Defendants, does not allow the Court to "infer that [the Manufacturer Defendants] decided on this purpose together with" the Laboratory Defendants as an enterprise. *Cisneros*, 972 F.3d at 1213. And while Ledbetter repeatedly asserts that "all . . . defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim,"[48] the Court is not required to accept the truth of conclusory statements like these. *See Iqbal*, 556 U.S. at 678.

It is further telling of the deficiency of Ledbetter's enterprise allegations just how many John Doe defendants she has included in place of named participants in the enterprises. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."). In this way, Ledbetter is asking the Court to allow her RICO claims to proceed based on conclusory allegations committed by unnamed parties—in essence, unidentified wrongdoing by unidentified wrongdoers. For one of the four alleged enterprises between a manufacturer and a laboratory, the only named defendant is the manufacturer—for the alleged enterprises responsible for Huckleberry

---

[47]    *Id.* ¶¶ 70, 443.

[48]    *Id.* ¶¶ 490, 522, 554, 586.

Gelato,[49] the laboratory defendant is a "John Doe laboratory."[50] Ledbetter named Pharmlabs as the laboratory defendant for two of the alleged enterprises,[51] but soon after filing the SAC, she dismissed it from the case.[52] And almost every distillate maker is a "John Doe laboratory" or "John Doe distillate maker."[53] The speculation inherent in allegations involving these John Doe parties is apparent with the following example. While describing the alleged enterprise responsible for Blue Gusherz, Ledbetter states that L&K "*may have* purchased the distillate to manufacture their vape pen from John Doe distillate maker who *may have* had their distillate tested by a John Doe laboratory."[54] Bare, speculative allegations like these are not enough to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555.

In the end, Ledbetter has alleged only that unnamed distillate makers sell distillate, potentially with excess levels of Delta-9 THC, to Manufacturer

---

[49]   While Ledbetter does name Encore Labs among the "Stiiizy Defendants," she alleges Encore's role is as a laboratory who tests the end product rather than as one that manufactures distillate or tests the distillate. *See id.* ¶ 581.

[50]   *See id.* ¶ 504.

[51]   *See id.* ¶¶ 471 (Power Plant & Forbidden Jelly), 536 (Blue Gusherz).

[52]   *See* ECFs 215–16.

[53]   *See* ECF 200, ¶¶ 471, 504, 536, 568. The only named distillate maker is Pur Iso Labs, *see id.* ¶ 471, who is currently in default, *see* ECF 204.

[54]   ECF 200, ¶ 549 (emphasis added). Such speculative allegations involving various John Doe parties are repeated in many of Ledbetter's RICO claims. *See id.* ¶¶ 486, 581.

Defendants who use that distillate to manufacture vape pens that have COAs issued by Laboratory Defendants. She has not plausibly alleged that four groups of Defendants are working together to further four shared criminal purposes, and, therefore, she has not adequately pled the existence of any association-in-fact RICO enterprises. Her SAC fails to state a claim for a violation of 18 U.S.C. § 1962(c).

### C. Ledbetter's federal RICO conspiracy claim must be dismissed.

Count III of the RICO Counts against the four purported enterprises is a RICO conspiracy claim, which alleges that the Manufacturer and Laboratory Defendants conspired to commit the substantive RICO offense discussed above, in violation of 18 U.S.C. § 1962(d). A RICO conspiracy can be found through "the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007) (quoting *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005)). But of course, "parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Jackson v. BellSouth Telecomms*, 372 F.3d 1250, 1269 (11th Cir. 2004). And a complaint that "simply concludes that the defendants conspired and confederated to commit conduct which in itself does not constitute a RICO violation" must be dismissed. *Id.* (quotation omitted).

This is what Ledbetter has done here. In each RICO Count III, Ledbetter states that the Defendants "agreed and conspired . . . to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of selling illegal D8 vape pens. . . after testing with the Lab Defendants who agreed to provide false THC values and conceal harmful substances in the marijuana." Ledbetter's theory of conspiracy here matches her theory of a substantive RICO offense, which this Court has concluded fails to state a claim. Because Ledbetter has failed to adequately allege an association-in-fact enterprise, her RICO conspiracy claim must also fail.

This leaves only the state law claims remaining. The federal RICO claims served as Ledbetter's primary basis for why the Court's exercise of personal jurisdiction over the Manufacturer and Laboratory Defendants was proper,[55] and they also supported her primary theory for why the Court had subject matter jurisdiction over the case.[56] The Court therefore must address issues relating to personal and subject matter jurisdiction before it can consider the remaining state law claims.

---

[55]    *Id.* ¶ 15.

[56]    *Id.* ¶ 8.

**III.**  **The Court does not have personal jurisdiction over the Laboratory Defendants, Individual Defendants, and most of the Manufacturer Defendants.**

The Manufacturer Defendants—Stiiizy, L&K, Cookies, and Savage Enterprises[57]—and the only named Laboratory Defendant, Encore Labs, move to dismiss on the grounds that the Court does not have personal jurisdiction over them if the federal RICO claims do not survive dismissal.[58] Further, the Individual Defendants—Montesano, Winters, and Dougherty, all officers of Savage Enterprise—move to dismiss on personal jurisdiction grounds.[59] Largely, all Defendants contesting personal jurisdiction argue that the SAC fails to allege any specific forum contacts as to each of them that would support the Court's exercise of specific jurisdiction over any of them. In other words, they argue that personal jurisdiction must be assessed defendant by defendant, and that the SAC's lumping of claims fails, as a matter of law, to properly allege that the Court has personal jurisdiction over any of them.

---

[57]  Note that Savage Enterprises did not brief arguments concerning the Court's exercise of personal jurisdiction over it. In a motion to dismiss filed by Savage Enterprises and other persons affiliated with the company, it simply joined the arguments raised in the Joint Motion. ECF 229, at 3. But because the Joint Motion contests personal jurisdiction, *see* ECF 219, at 27–30, the Court considers Savage Enterprises to have preserved this defense.

[58]  ECF 219, at 27 (arguing that Ledbetter abandoned her theory of personal jurisdiction under the Georgia Long-Arm statute); ECF 230, at 6; ECF 231, at 8; ECF 235, at 7; ECF 236, at 2 n.1.

[59]  ECF 229, at 7.

### A. Legal standard on a motion to dismiss for lack of personal jurisdiction.

"The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). The Supreme Court recognizes two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). In contrast, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Id.* at 919 (citation omitted).

Ledbetter does not contend that the Manufacturer, Laboratory, or Individual Defendants are subject to general jurisdiction, so the Court need only consider whether specific jurisdiction exists. A federal court sitting in diversity undertakes a two-step inquiry in determining whether specific personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth

Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* at 1259 (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)).

To satisfy the Georgia long-arm statute, a plaintiff must show that personal jurisdiction is permitted under one of the express statutory bases, interpreted and applied literally. *Id.* Since the Court's application of the Georgia long-arm statute is governed by state law, the Court "must interpret and apply Georgia's long arm statute in the same way as would the Georgia Supreme Court." *Id.* at 1258. To satisfy due process, the defendant must have "fair warning" that its activities in the forum may subject it to jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). The nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

**B.    The Court must assess personal jurisdiction defendant-by-defendant.**

Ledbetter responded to the Defendants' Joint Motion, as well as to each additional motion to dismiss raised by a single party, by raising varying arguments for why the Court's exercise of personal jurisdiction over these parties would be proper. She primarily argues that the Court has "pendent personal jurisdiction" over the Defendants on the state-law claims because they "arise from the same nucleus of operative facts as the federal RICO claims," of which personal jurisdiction is supported by Section 1965(d).[60] This argument was already tenuous, even before the federal RICO claims were dismissed, because "pendent personal jurisdiction" (also referred to as "supplemental personal jurisdiction") is a doctrine that—if it exists at all—is supported only by federal common law. *See Moore v. Cecil*, 488 F. Supp. 3d 1144, 1160 (N.D. Ala. 2020) ("A federal statute, 28 U.S.C. § 1367, governs the exercise of supplemental *subject matter* jurisdiction but does not address supplemental or pendent *personal* jurisdiction.") (emphasis in the original); *Wright & Miller's Federal Practice & Procedure* § 1069.7 (4th ed. 2025) (explaining that because "there is no federal statute on [pendent personal jurisdiction], it seems clear that if it exists, pendent personal jurisdiction must be a creature of federal common law"). It is unclear whether the Eleventh Circuit has

---

[60]    ECF 242, at 22.

even recognized the doctrine. *See Moore*, 488 F. Supp. 3d. at 1160 (noting that "Eleventh Circuit law on [supplemental personal jurisdiction] is sparse" and citing two Eleventh Circuit cases which do not include the words "supplemental" or "pendent personal jurisdiction"). Because the Court has dismissed the RICO claims on which Ledbetter argues that pendent personal jurisdiction attaches, the Court declines to consider whether to exercise personal jurisdiction over the Manufacturer and Laboratory Defendants on such tenuous grounds. *See Wright & Miller*, *supra*, § 1069.7 (noting that, where pendent personal jurisdiction is recognized, district courts have "discretion to decline to exercise [it]," particularly "if the only jurisdictionally sufficient claim is dropped or dismissed").

As such, Ledbetter's claims against the Defendants contesting personal jurisdiction must be proper under Georgia's long-arm statute and constitutional due process. *Diamond Crystal*, 593 F.3d at 1257–58. Georgia's long-arm statute permits the exercise of jurisdiction over a nonresident defendant under six express statutory bases. O.C.G.A. § 9-10-91. Relevant here, the Georgia long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

> (2) Commits a tortious act or omission within this state . . . ;
>
> (3) . . .
>
> (4) Owns, uses, or possesses any real property situated within this state.

O.C.G.A. § 9-10-91. Because the Court must have personal jurisdiction over each Defendant, the Court will assess Ledbetter's jurisdictional allegations defendant-by-defendant, beginning with each of the Manufacturer and Laboratory Defendants.[61]

### 1. The Court lacks personal jurisdiction over Cookies.

Ledbetter's allegations are insufficient to establish personal jurisdiction over Cookies, as they provide only speculation about transactions that "may have" happened.[62] As to Cookies, Ledbetter states only that she purchased one of Cookies' products, Huckleberry Gelato, from "www.elementvape.com,"[63] that Element Vape shipped the product to Norcross, Georgia,[64] and that "Element Vape

---

[61] While L&K, Cookies, and Encore Labs also contested personal jurisdiction under Georgia's long-arm statute, *see* ECFs 230, 235, 236, Ledbetter failed to respond to those arguments, resting primarily on pendent personal jurisdiction under RICO, *see* ECFs 244, 253, or, as was the case in her response to Cookies, failing to mention personal jurisdiction entirely, *see* ECF 246.

[62] *Id.* ¶ 504.

[63] *Id.* ¶ 21.

[64] *Id.*

may have purchased [Huckleberry Gelato] from John Doe Distributor . . . or may have purchased the product directly from Cookies."[65]

The Court cannot exercise personal jurisdiction over a nonresident defendant based merely on speculation. *See Meier*, 288 F.3d at 1268–69 (stating that the burden is on the plaintiff to establish a prima facie case of personal jurisdiction). It is telling that Ledbetter did not even contest the portion of Cookies' motion to dismiss that argued lack of personal jurisdiction.[66] Accordingly, Cookies' motion to dismiss is **GRANTED** pursuant to Rule 12(b)(2).[67]

### 2.    The Court lacks personal jurisdiction over Encore Labs.

The Court likewise lacks personal jurisdiction over Encore Labs. The SAC's broad allegations merely assert that Stiiizy opted to have Encore Labs independently test its products before Stiiizy sent the products to an online retailer.[68] This does not satisfy any provision of the long-arm statute.

To meet § 9-10-91(1) of the Georgia long-arm statute, Ledbetter must show that (1) Encore Labs transacted business within Georgia, and (2) her cause of action

---

[65]   *Id.* ¶ 504.

[66]   *See generally* ECF 246. The words "personal jurisdiction" are not mentioned once, despite Cookies moving to dismiss under Rule 12(b)(6) and 12(b)(2). *Id.*

[67]   ECF 235.

[68]   ECF 200, ¶ 568 ("Defendant retailer Element Vape purchased product from Stiiizy. Stiiizy had the distillate tested by Defendant Encore Labs, LLC.").

31

arises out of such business transaction(s). *Diamond Crystal*, 593 F.3d at 1264. To have transacted business in Georgia, Encore Labs must have "purposefully done some act or consummated some transaction in this state." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517 (2006) (internal citations omitted). Ledbetter fails to allege that Encore Labs did anything of this nature. She does not even allege that any of the samples tested by Encore Labs ended up in Georgia. These allegations do not satisfy the long-arm statute, let alone constitutional due process. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Accordingly, Encore Labs' motion to dismiss is **GRANTED** pursuant to Rule 12(b)(2).[69]

### 3. The Court lacks personal jurisdiction over L&K and Stiiizy.

The Court will address L&K and Stiiizy together because the SAC's allegations against them are largely the same. Ledbetter asserts that Element Vape, an online retailer, purchased vape pens from L&K and Stiiizy;[70] Ledbetter later ordered vapes from Element Vape's online website;[71] and Element Vape had the

---

[69]   ECF 236, at 2 n.1 (incorporating by reference ECF 150); ECF 219.

[70]   ECF 200, ¶¶ 536, 568. *See also id.* ¶ ¶ 539, 571.

[71]   *Id.* ¶ 21.

products shipped to Ledbetter in Georgia.[72] Ledbetter argues that personal jurisdiction is satisfied through subsections (1) and (4) of Georgia's long-arm statute.[73]

Subsection (4) is plainly not satisfied—not once does the SAC assert that L&K or Stiiizy "own[], use[], or possess[] any real property situated within [Georgia]." O.C.G.A. § 9-10-91(4). That leaves only subsection (1). Again, Ledbetter fails to satisfy the long-arm statute.

Her broad allegations are insufficient to demonstrate that L&K and Stiiizy transacted business within Georgia. Ledbetter does not specify any details surrounding L&K or Stiiizy's sales to Element Vape, nor does she establish whether the manufacturers knew their products were being sent to Georgia. Ledbetter acknowledges that Element Vape is "an online retailer," organized under Alabama's limited liability laws, that "sells and distributes D8 and other vape products across several states, including Georgia."[74] It is insufficient to allege that L&K and Stiiizy distribute their products to an online retailer who sells products "across several states" without connecting their distribution practices in Georgia to the vape pens that Ledbetter purchased. *See generally Kurtz v. LG Chem,*

---

[72]  *Id.*

[73]  ECF 250, at 8.

[74]  ECF 200, ¶ 25.

*Ltd.*, 2022 WL 19331877, at *2 (N.D. Ga. Mar. 9, 2022) (requiring, for purposes of § 9-10-91(1), that the plaintiff allege how the product that ultimately caused his harm is connected to the defendant's distribution practices in Georgia). Where Ledbetter alleges merely that L&K and Stiiizy sold their products to an Alabama-based online retailer with a multi-state market, she alleges "[a]t most," that the online retailer "transacted business in Georgia, not the Defendant[s]." *Paradise Media Ventures, LLC v. Mills*, 2013 WL 6388627, at *3 (N.D. Ga. Dec. 5, 2013).

Again, Ledbetter's allegations do not satisfy the long-arm statute, and they certainly do not satisfy constitutional due process. What the SAC's factually bare allegations describe is a manufacturer placing its products into the so-called "stream of commerce," but the Supreme Court has never upheld the exercise of jurisdiction on a stream-of-commerce theory standing alone. *See LG Chem, Ltd. v. Lemmerman*, 361 Ga. App. 163, 171 n.8 (2021) (citing *J. McIntyre Machinery v. Nicastro*, 564 U.S. 873 (2011) (plurality opinion)); *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion) (advocating for additional details to support the stream-of-commerce theory, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.*"); see also Jekyll Island-State Park Auth. v.*

34

*Polygroup Macau Ltd.*, 140 F.4th 1304, 1321–22 (11th Cir. 2025) (requiring additional contacts with the forum other than merely placing the injury-causing product in the stream of commerce). Accordingly, L&K and Stiiizy's motions to dismiss are **GRANTED** pursuant to Rule 12(b)(2).[75]

### 4. The Court's exercise of personal jurisdiction over Savage Enterprises comports with the long-arm statute and due process.

The Court now considers the last of the Manufacturer Defendants, Savage Enterprises. Here, the SAC alleges just enough to demonstrate that the Court's exercise of personal jurisdiction is proper. The SAC specifies that Ledbetter purchased two of Savage Enterprise's products—Forbidden Jelly and Power Plant—from retail locations in Lawrenceville, Georgia in November 2023.[76] She alleges that Savage Enterprises sold these products to the retailers,[77] and she also alleges that these retailers predominantly do business in Georgia—that Cloud 9 has locations only in Florida and Georgia and that Xhale City has locations only in Georgia.[78]

---

[75] ECF 230, at 6 (incorporating by reference ECF 153); ECF 231, at 9; ECF 219.

[76] ECF 200, ¶¶ 16–17.

[77] *Id.* ¶ 471.

[78] *Id.* ¶¶ 23–24.

These allegations are enough to support § 9-10-91(1) of the long-arm statute. They allege that Savage Enterprises sold its products to Georgia-based retailers to be purchased by Georgia customers. This meets the "literal construction" of "transacts any business" found in § 9-10-91(1), *Diamond Crystal*, 593 F.3d at 1261–62 (citing *Innovative Clinical*, 279 Ga. at 675), and shows that Savage Enterprises "purposefully [did] some act or consummated some transaction in [Georgia]." *Aero Toy Store*, 279 Ga. App. at 517 (internal citations omitted). Ledbetter's cause of action also "arises out of" Savage Enterprises' transactions within Georgia because her claims against the company concern the very products they sent into the state for customers to purchase. *See Diamond Crystal*, 593 F.3d at 1264.

The Court's exercise of personal jurisdiction over Savage Enterprises also comports with constitutional due process. The constitutional due process inquiry is a three-step analysis. The Court must consider "whether [a] plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum" state; (2) "whether the . . . defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state"; and (3) finally, "whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (internal citations omitted).

First, as already discussed, Ledbetter's claims "arise out of or relate to" Savage Enterprises' contacts with the forum. Because the products Savage Enterprises sold to Georgia-based retailers include the vape pens allegedly giving rise to Ledbetter's claims, "this litigation has the required connection to [Ledbetter's Georgia-based] contacts." *Id.*

Second, to support purposeful availment, the defendant must have had contacts with the forum that were its "own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Those contacts "must show that the defendant deliberately 'reached out beyond' its home," such as by "'exploit[ing] a market' in the forum State or 'entering a contractual relationship centered'" in the forum. *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Again, this is readily established: Savage Enterprises seemingly made a "choice" to sell its products to "a market in the forum state" when it sold products to Georgia retailers for final sale to Georgia consumers. *Id.* (internal citations and quotations omitted).

Third and finally, the Court must consider "whether the exercise of jurisdiction in [Georgia] accords with 'traditional notions of fair play and substantial justice.'" *SkyHop Techs.*, 58 F.4th at 1231. The burden is on the defendant to make "a compelling case" that the exercise of jurisdiction is

improper. *Id.* (internal citations omitted). Savage Enterprises has not attempted to do so; indeed, Savage Enterprises' only arguments contesting the exercise of personal jurisdiction over it are found in the Joint Motion. Accordingly, the Court concludes that the exercise of personal jurisdiction over Savage Enterprises is consistent with constitutional due process. To the extent that Savage Enterprises moves to dismiss under Rule 12(b)(2),[79] that motion is **DENIED**.

### 5.    The Court lacks personal jurisdiction over Montesano, Winters, and Dougherty.

The SAC's allegations are most sparse as to the Individual Defendants. As to Montesano, Winters, and Dougherty, the SAC states only that:

- "The corporate officers are listed as . . . Matt Winters as President and shareholder. . . . Corporate filings show five shareholders: Mathew [sic] Winter – 40.5%;"[80]

- "Jon Dougherty holds himself out as the president of Savage Enterprises on social media platforms such as LinkedIn;"[81]

- "The corporate officers are also shown as Matthew Montesano, Chief Financial Officer; Matthew Winters, Chief Executive Officer;"[82]

---

[79]   *See* ECF 219; ECF 229, at 3 (incorporating by reference the Joint Motion).

[80]   ECF 200, ¶ 30.

[81]   *Id.*

[82]   *Id.*

Other than these general allegations about their roles as officers or shareholders of Savage Enterprises, the SAC does not even mention Montesano, Winters, or Dougherty by name.[83] Moreover, not one of the SAC's 42 counts states that it is being brought against Montesano, Winters, or Dougherty.[84] No specific contact is attributed to them, let alone any contact or connection to Georgia. Accordingly, the Individual Defendants' motion to dismiss is **GRANTED** pursuant to Rule 12(b)(2).[85]

---

[83] While the SAC does attempt to ascribe a group moniker to Montesano, Winters, and Dougherty, *see id.* (referring to Montesano, Winters, Dougherty, and others as "the Savage Defendants"), the Court will not attribute any allegations about "the Savage Defendants" to Montesano, Winters, or Dougherty for jurisdictional purposes. That is for two reasons. First, a plaintiff must allege facts specific to each defendant to sustain her initial burden of showing a defendant's minimum contacts with the forum. *See Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1331–32 (N.D. Ga. 2016) (finding insufficient factual basis for the Court to conclude that it could exercise personal jurisdiction over a defendant because the plaintiff "alleged no facts, specific to [the defendant]" to show the defendant's contacts with Georgia). Second, the SAC also confusingly refers to another group of defendants as the "Savage Defendants," *id.* ¶ 471 (referring to Cloud 9 Online Smoke and Vape, LLC, Savage Enterprises, Pharmlabs, Xhale City, and various John Does), and uses the term in counts where Montesano, Winters, and Dougherty are not named as defendants. For these reasons, the Court lacks any specific facts by which it can assess the Individual Defendants' contacts with Georgia.

[84] *See* ECF 229, at 6.

[85] *Id.*

39

**IV.    The Court's subject matter jurisdiction.**

Only Savage Enterprises and the Retail Defendants remain. Having dismissed the federal claims, there is no federal question jurisdiction remaining in this case. Ledbetter argues that the state law claims are nevertheless properly in federal court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), and the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367.[86]

**A.    Legal standard on a motion to dismiss for lack of subject matter jurisdiction.**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the allegations in the complaint are taken as true. *Id.* at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations omitted). By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the

---

[86]   ECF 200, ¶ 8. Ledbetter also argues that Rule 19 of the Federal Rules of Civil Procedure allows for jurisdiction. *Id.* ¶¶ 9, 13. This argument is plainly frivolous. Rule 19 concerns the joinder of absent parties; it is not a way to circumvent the requirements of subject matter jurisdiction. *See* Fed. R. Civ. Pro. 19.

pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). The Retail Defendants are the only defendants challenging subject matter jurisdiction, and they raise both facial and factual attacks.[87]

> **B.      Ledbetter has not established subject matter jurisdiction under CAFA.**

CAFA vests district courts with diversity jurisdiction over putative class actions where (1) the proposed class has 100 or more members; (2) at least one member of the proposed class has a different citizenship from at least one defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate. 28 U.S.C. § 1332(d)(2), (6).

The Retail Defendants have each contested the threadbare jurisdictional allegations of the SAC.[88] Those allegations consist of Ledbetter's jurisdictional statement and her description of the class. The jurisdictional statement merely alleges, in conclusory fashion, that "the aggregate amount in controversy exceeds $5 million in retail sales of vape pens using the illegal distillate, minimal diversity exists, and the proposed class consists of more than 100 members."[89] As to her description of the putative class, Ledbetter asserts that it consists of "thousands of

---

[87]    *See* ECF 232, at 5; ECF 233, at 5; ECF 234, at 6.

[88]    ECF 232, at 5; ECF 233, at 5; ECF 234, at 6.

[89]    ECF 200, ¶ 9.

class members," who "bought one or more of the same Products purchased by Plaintiff . . . in the State of Georgia who have a receipt or are identified in Defendants, Cloud 9, Element, Xhale City, and Xhale Franchise['s] purchaser database within the appropriate statute of limitations until the date of certification."[90] In what the Court interprets as a facial challenge, the Retail Defendants argue that the SAC "fails to show on its face that the amount in controversy exceeds $5,000,000" and says nothing about the citizenship of the putative class members or the size of the class.[91]

The Retail Defendants proceed to raise a factual challenge, asserting that Ledbetter "cannot prove by a preponderance of the evidence that she satisfies the amount in controversy amount" and that she "cannot point to a single other member of her supposed class beside herself."[92] When one party or the Court contests the jurisdictional allegations of the party seeking federal court adjudication, the party seeking to litigate in federal court "bears the burden of proof to establish by a preponderance of the evidence" that jurisdiction is satisfied,

---

[90]  *Id.* ¶ 87.

[91]  ECF 232, at 5; ECF 233, at 5; ECF 234, at 6. While minimum diversity may be met between Ledbetter, a citizen of Georgia, *see* ECF 270, and Savage Enterprises, a citizen of Wyoming and California, *see* ECF 268, the Retail Defendants' arguments regarding the amount in controversy and class size hold water.

[92]  ECF 232, at 5.

usually requiring a showing that "the [CAFA] amount in controversy exceeds the jurisdictional minimum." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014).

Ledbetter cannot overcome either challenge. In response to the subject matter jurisdiction challenges raised by the Retail Defendants, Ledbetter offers no evidence, resting only on her pleadings to reiterate that "[t]he SAC explicitly alleges that proposed nationwide class includes hundreds—if not thousands—of purchasers," "putting 'millions of dollars' at issue" and "alleges diversity of citizenship between Plaintiff and multiple Defendants."[93] Offering no specifics as to class size or the amount in controversy, these allegations fail to show by a preponderance of the evidence that CAFA's jurisdictional requirements are met.[94] Indeed, during oral argument, counsel for Ledbetter acknowledged as much: "I'm not certain if the amount in controversy exceeds 5 million. It should. It may, but I'm not certain."[95] Given a chance to replead since oral argument, Ledbetter still offers only conclusory jurisdictional allegations, which fail to provide the Court

---

[93] ECF 247, at 5; ECF 248, at 7 (same). *See also* ECF 245, at 3 (stating only that there is "jurisdiction under the Class Action Fairness Act").

[94] Ledbetter did not make a request for jurisdictional discovery. *See Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (describing jurisdictional discovery as a "qualified right" that the parties must request).

[95] ECF 238, at 21.

43

with any evidence on which it can ascertain that its exercise of jurisdiction would be proper.

The Retail Defendants point out that even if every class member had spent the same amount of money on the allegedly illegal vape pens as Ledbetter did—a sum totaling $146.74—the putative class would need to consist of over 34,000 members for the amount in controversy to be met.[96] Notably, with the possibility of treble damages on the Georgia RICO claims, the class must be over 11,000 members, not 34,000. Still, Ledbetter counters only that the class includes "hundreds—if not thousands—of purchasers";[97] she gets nowhere close to asserting that the class contains over 11,000 other plaintiffs. Ledbetter simply does not supply the evidence upon which the Court can make "reasonable inferences" that the class is this large. *Dudley*, 778 F.3d at 913 (affirming the district court's determination that the party seeking jurisdiction under CAFA "ha[d] not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000"). Courts have found the amount in controversy established in a CAFA class action based on, for example, declarations or affidavits made by people with knowledge of the claims amount and class size. *See, e.g., Anderson*, 943 F.3d at 923–24 (finding jurisdictional amount established where non-movant

---

[96]   ECF 232, at 5.

[97]   ECF 247, at 5; ECF 248, at 7 (same).

submitted a declaration from a company manager estimating a dollar amount based on the face value of life insurance policies and the number of policies owned by potential class members); *Williams v. Dollar Gen. Corp.*, 2023 WL 2703998, at *2–3 (M.D. Ala. Mar. 29, 2023) (finding jurisdictional amount established based on declaration from a director of merchandising analytics who relied on sales data); *c.f., Dudley*, 778 F.3d at 913 (granting remand on grounds that damages calculations made improper assumptions that all class members were denied the same amount of benefits). Yet, here, the Court has only Ledbetter's naked assertions.[98]

Accordingly, Ledbetter has not carried her burden, as the party seeking federal court adjudication, to establish that subject matter jurisdiction is proper under CAFA.

### C. The Court lacks subject matter jurisdiction under traditional diversity of citizenship jurisdiction.

The Court also considers, independently, whether diversity of citizenship jurisdiction is met under Section 1332(a)(1), without having to rely on CAFA's

---

[98] Ledbetter also fails to overcome the Retail Defendants' facial challenge to her assertion that jurisdiction is proper under CAFA. As identified, Ledbetter provides merely a formulaic recitation of CAFA's statutory requirements. *See* ECF 200, ¶¶ 9, 87. "Formulaic recitations of the statutory language" are insufficient to overcome a motion to dismiss for lack of subject matter jurisdiction. *Griffin v. Internal Revenue Serv.*, 730 F. Supp. 3d 1312, 1320 (S.D. Fla. 2024) (citing *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1118 (11th Cir. 2022)).

amount-in-controversy requirement. In a class action based on traditional diversity jurisdiction, unlike in a class action brought under CAFA, claims of multiple class members cannot be aggregated to surpass the amount-in-controversy threshold. *See Snyder v. Harris*, 394 U.S. 332, 336–37 (1969) (holding that Rule 23 did not alter the prohibition against aggregating claims of two or more plaintiffs to meet the amount-in-controversy requirement); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 (11th Cir. 2010) (noting the distinction under CAFA allowing for the aggregation of plaintiffs' claims); *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts."). Here, Ledbetter has plainly not satisfied the amount-in-controversy requirement. Ledbetter spent only $146.74 on the allegedly noncompliant vape pens;[99] even considering the treble damages she seeks for her Georgia RICO claim, the amount-in-controversy is well below the $75,000 threshold. Accordingly, the Court also lacks subject matter jurisdiction under Section 1332(a)(1) to hear the remaining state law claims.

---

[99] ECF 200, ¶¶ 16–17, 21. Even the $146.74 amount in controversy is too high because it aggregates Ledbetter's claims against multiple defendants, which is not allowed under Section 1332(a)(1). *See Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961) ("The general rule with respect to the aggregation of the claims of a plaintiff against two or more defendants is that 'where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate.'") (internal citations omitted).

**D.      The Court declines to exercise supplemental jurisdiction over the claims against the remaining Defendants.**

Having dismissed Ledbetter's federal claims and having determined the Court lacks an independent basis for subject matter jurisdiction over the state law claims against the Retail Defendants and Savage Enterprises, the Court is left only with a decision on whether to exercise supplemental jurisdiction. As provided in 28 U.S.C. § 1367(c)(3), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a)" in certain contexts, such as if "the claim raises a novel or complex issue of State law" or "the district court has dismissed all claims over which it has original jurisdiction," among others. In these contexts, "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Because the outcome of this dispute now depends exclusively on issues of state law, the Court finds that judicial economy, fairness, and convenience favor declining to exercise supplemental jurisdiction over Ledbetter's remaining claims against the Retail Defendants and Savage Enterprises. This result is especially desirable considering Ledbetter seeks to impose potentially existential liability on

a nascent industry in the state. Such questions are better left to the Georgia courts to determine.

Because "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice," *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008), the claims against the Retail Defendants and Savage Enterprises are **dismissed without prejudice**.

## V.   Remaining Defendants

The Court notes that there are two remaining defendants who appear named in the lawsuit but whom Ledbetter seemingly has stated no claims against. These two defendants are Savage Eliquid Corporation and Delta Extrax. Because Ledbetter has stated no claims against them, they are dismissed without prejudice.

There also remains Pur Iso Labs, who is in default.[100] The federal RICO claims against Pur Iso Labs are dismissed with prejudice because Ledbetter fails to allege the existence of an enterprise for the reasons discussed above. The state law claims against Pur Iso Labs are dismissed without prejudice because the Court lacks subject matter jurisdiction to adjudicate them, also for reasons previously discussed.

---

[100]  *See* ECF 204; December 2, 2024 Docket Entry ("Clerks Entry of Default as to Pur Iso Labs LLC.").

**VI.    Conclusion**

For the reasons stated above, this entire action is **DISMISSED**. The Joint Motion [ECF 219] is **GRANTED** to the extent that it argues that the federal RICO claims fail to state a claim. The Savage Defendants' Motion [ECF 229] is **GRANTED in part** and **DENIED in part**; it is granted to the extent that it argues the Court lacks personal jurisdiction over Winters, Montesano, and Dougherty, but it is denied to the extent that it argues the Court lacks personal jurisdiction over Savage Enterprises. L&K's Motion [ECF 230], Stiiizy's Motion [ECF 231], Cookies' Motion [ECF 235], and Encore Lab's Motion [ECF 236] are all **GRANTED** to the extent that they argue the Court lacks personal jurisdiction over them for the remaining state law claims. Xhale City's Motion [ECF 232], Cloud 9's Motion [ECF 233], and Element Vape's Motion [ECF 234] are all **GRANTED** to the extent that they argue the Court lacks subject matter jurisdiction over them. And because the Court lacks subject matter jurisdiction over Savage Enterprises, the remaining state law claims against it are **dismissed**.

The federal RICO claims are **DISMISSED with prejudice**. The state law claims are **DISMISSED without prejudice**.

Lastly, Ledbetter's motion to amend particular responsive briefs already filed [ECF 252] is **DENIED**.

49

50

The Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 31st day of March, 2026.

                                    Steven D. Grimberg
                          United States District Judge